UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------x

KRISTIN STEIN,

                    Plaintiff,

                    -against-

TOWN OF GREENBURGH, BRIAN RYAN in his official
capacity as Interim Chief of Police and individually,
CHRIS MCNERNEY in his official capacity as Chief of
Police and individually, ROBERT J. GRAMAGLIA in
his official capacity as a Lieutenant and individually,
KOBIE POWELL in his official capacity as a Lieutenant
and individually, BRIAN MATTHEWS in his official
capacity as a Lieutenant and individually, FRANK FARINA
in his official capacity as a Patrol Captain and individually,
DENNIS BASULTO in his official capacities as a Sergeant
and Lieutenant and individually, ERIC VLASATY in his
official capacity as a Sergeant and individually,
PATRICK T. GRADY in his official capacity as a Sergeant
and individually, MICHAEL COOKINGHAM in his
official capacity as a Sergeant and individually, ALEX
RODRIGUEZ in his official capacity as a Sergeant and
individually, JEFF CERONE in his official capacity as a
Police Officer and individually, JOHN PILLA, in his official
capacity as a Police Officer and individually, BRIAN DOHERTY,
in his official capacity as a Police Officer and individually,
DYANA ALBANO in her official capacity as a Police Officer
and individually, and FRANK KOZAKIEWICZ in his official
capacity as a Police Officer and individually,

                    Defendants.
---------------------------------------------------------------------------x

**COMPLAINT**

**Jury Trial Demanded**

        Plaintiff KRISTIN STEIN, by and through her attorneys, Murtagh, Cossu, Venditti &

Castro-Blanco, LLP as and for her Complaint, alleges as follows:

## NATURE OF THE CASE

1.      This is an action for equitable relief and monetary damages on behalf of Plaintiff, Kristin Stein ("Plaintiff") who was and who is prospectively being deprived of her civil and state constitutional rights as a result of the Defendants' acts of discrimination based upon her gender and sexual orientation and in retaliation for engaging in protected activity. In addition, Plaintiff has been subjected to sexual harassment and a hostile work environment created, condoned, and tolerated by defendants. From the date of her hire in or about January 2017 to the present date, Plaintiff has suffered constant unwelcome sexual advances, humiliation and embarrassment in front of her co-workers and was the target of outrageously lewd behavior in the form of a sexual assault by Defendant Cerone, which was observed and tolerated by Plaintiff's supervisors. Further, she suffered and continues to suffer ongoing retaliation as a result of her complaints about that incident and for having filed an EEOC Charge setting forth such discriminatory and retaliatory conduct. She has been further victimized by the Town of Greenburgh Police Department, blackballed in her profession as a police officer as a result of having spoken out about the sexual harassment and retaliation that she has experienced, she has been described as a "sexual harassment liability," and has lost employment opportunities as a result.

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court is proper under 18 U.S.C §1965, 28 U.S.C. §§ 1331, 1343 and 2202 to secure protection of and to redress deprivation of rights secured by the First Amendment Freedom of Speech and by the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution and provisions against sex discrimination and retaliation in employment based upon Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. seq.; 42 U.S.C. §1983, along with applicable provisions of the New York State Constitution and New York State Executive Law.

3.      This Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

4.      Venue is based on the place of business of Defendants and the location of the acts that form the basis of this complaint. Venue is proper in this district pursuant to 28 USC §1391(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Plaintiff has filed suit with this Court within the applicable statute of limitations period.

6.      Plaintiff is not required to exhaust any administrative procedures or remedies prior to suit pursuant to 42 U.S.C. 1983 or under the United States Constitution.

7.      Plaintiff has complied fully with all prerequisites for jurisdiction in this Court by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission, which forwarded same to the Department of Justice For Action (*see*, Exhibit A attached hereto).

8.      This Complaint has been filed within ninety (90) days of receipt of the Department of Justice issuing a notice informing Plaintiff of her right to sue in federal court (*see*, Exhibit B attached hereto).

## PARTIES

9.      At all times hereinafter mentioned, Plaintiff was and still is a female resident of the County of Westchester, State of New York employed as a police officer by the Town of Greenburgh, County of Westchester, State of New York.

10.     At all times hereinafter mentioned, Defendant Town of Greenburgh ("Town") was and still is a municipal corporation duly organized and existing under and by virtue of the laws of

the State of New York, located in Westchester County with its principal place of business located at 177 Hillside Ave., Greenburgh Town Hall, Greenburgh, NY 10607.

11.     Defendant Town maintains the Town of Greenburgh Police Department (hereinafter referred to as "GPD"), as authorized under the laws of the State of New York, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.

12.     At all relevant times herein, Defendant Town was responsible for the policy, practice, supervision, implementation and conduct of all police department matters. In addition, at all times relevant and material herein, Defendant Town was responsible for ensuring that its personnel obeyed the laws of the United States and the State of New York.

13.     At all times relevant herein, the Town meets the definition of an employer under all applicable state and local statutes.

14.     At all times hereinafter mentioned, Plaintiff was an employee of the Town and GPD within the meaning of the aforementioned statutes.

15.     From in or about August 2019, Defendant Brian Ryan was employed by the Town as Interim Chief of Police with a principal place of business at 188 Tarrytown Rd, White Plains, NY 10607. Defendant Ryan has since retired as of September 29, 2020.

16.     At all times hereinafter mentioned from in or about December 2013 through August 2019, Defendant Chris McNerney was employed by Town as Chief of Police with a principal place of business at 188 Tarrytown Rd, White Plains, NY 10607. In or about August 2019, McNerney accepted a position as Chief Criminal Investigator with the Westchester County District Attorney Anthony Scarpino and was replaced as Chief by Defendant Ryan who remained in that position until his retirement. In or about July 2020, McNerney returned to and remains in his position as Chief of Police.

17.     At all times hereinafter mentioned, Defendant Robert J. Gramaglia was and still is employed by the Town as a Lieutenant with a principal place of business at 188 Tarrytown Rd, White Plains, NY 10607.

18.     At all times hereinafter mentioned, Defendant Kobie Powell was and still is employed by the Town as a Lieutenant with a principal place of business at 188 Tarrytown Rd, White Plains, NY 10607. Defendant Powell is the Commanding Officer of the Special Investigations Unit, which is a branch that exists outside the GPD's normal chain of command and its Commanding Officer, Defendant Powell, reports directly to the Chief of Police.

19.     At all times hereinafter mentioned, Defendant Brian Matthews was and still is employed by the Town as a Lieutenant with the title of Commanding Officer and with a principal place of business at 188 Tarrytown Rd, White Plains, NY 10607

20.     At all times hereinafter mentioned, Defendant Frank Farina was and still is employed by the Town as the Patrol Captain and is the Commanding Officer of the Patrol Division with a principal place of business at 188 Tarrytown Rd, White Plains, NY 10607.

21.     At all times hereinafter mentioned, Defendant Dennis Basulto was and still is employed by the Town as a Sergeant with a principal place of business at 188 Tarrytown Rd, White Plains, NY 10607. He has since been promoted to the rank of Lieutenant as of December 2020.

22.     At all times hereinafter mentioned, Defendant Eric Vlasaty was and still is employed by the Town as a Sergeant with a principal place of business at 188 Tarrytown Rd, White Plains, NY 10607.

23.     At all times hereinafter mentioned, Defendant Patrick T. Grady was and still is employed by the Town as a Sergeant with a principal place of business at 188 Tarrytown Rd, White Plains, NY 10607.

24.     At all times hereinafter mentioned, Defendant Michael Cookingham was and still is employed by the Town as a Sergeant and with a principal place of business at 188 Tarrytown Rd, White Plains, NY 10607.

25.     At all times hereinafter mentioned, Defendant Alex Rodriguez was and still is employed by the Town as a Sergeant with a principal place of business at 188 Tarrytown Rd, White Plains, NY 10607.

26.     At all times hereinafter mentioned, Defendant Jeff Cerone was and still is employed by the Town as a police officer, with a principal place of business at 188 Tarrytown Rd, White Plains, NY 10607.

27.     At all times hereinafter mentioned, Defendant John Pilla was employed by the Town as a Police Officer with a principal place of business at 188 Tarrytown Rd, White Plains, NY 10607. At all relevant times, Defendant Pilla was a PBA delegate. Upon information and belief, Defendant Pilla is currently employed by the Village of Larchmont in the Fire Department.

28.     At all times hereinafter mentioned, Defendant Brian Doherty was employed by the Town as a Police Officer with a principal place of business at 188 Tarrytown Rd, White Plains, NY 10607. Defendant Doherty is currently a PBA delegate.

29.     At all times hereinafter mentioned, Defendant Dyana Albano was and still is employed by the Town as a Police Officer with a principal place of business at 188 Tarrytown Rd, White Plains, NY 10607.

30.     At all times hereinafter mentioned, Defendant Frank Kozakiewicz was and still is employed by the Town as a Police Officer with a principal place of business at 188 Tarrytown Rd, White Plains, NY 10607.

31.     Defendant Ryan was and Defendants McNerney, Gramaglia, Powell, Matthews, Farina, Basulto, Vlasaty, Grady and Cookingham were and are responsible for GPD's maintenance and operation, including but not limited to the hiring, firing, granting of promotions and discipline of employees and all other employment related issues. Additionally, said Defendants are policymakers for the GPD and acted as agents of the Defendant Town, charged with the responsibility of ensuring that employees are not subjected to harassment or discriminatory treatment. They are also responsible for properly training and supervising employees with respect to harassment, discrimination, and retaliation. They aided, abetted, coerced and/or participated in the discriminatory conduct set forth below.

32.     Defendants Cerone, Pilla, Doherty, Albano and Kozakiewicz aided, abetted, coerced and/or participated in the discriminatory conduct set forth below.

## FACTUAL ALLEGATIONS

33.     Plaintiff, who is bisexual, has been employed as a Town of Greenburgh Police Officer since January 2017.

34.     At all times during Plaintiff's employment and continuing, a severe and pervasive sexually hostile environment exists.  This includes severe and pervasive sexual solicitations, jokes, comments, remarks and innuendo, both verbal and non-verbal.

35.     Such remarks were made by numerous co-workers from the inception of Plaintiff's employment. These remarks and conduct frequently occurred in the presence and/or with the knowledge of supervisors. Such conduct and remarks created a severe, pervasive, offensive, intimidating, hostile and discriminatory work environment.

36.     The hostile environment was and is maintained through actual and perceived threats of retaliation. Retaliation was and is directed by supervisors or co-workers for actual or perceived slights, conflicts, or complaints.

37.     Retaliation manifests in superior officers imposing undesirable assignments, dangerous assignments, unequal application of work rules, criticism, discipline, or delay in responding to a call for assistance.

38.     Retaliation further takes the form of disciplinary conduct whereby an officer is subjected to negative treatment, including but not limited to heightened scrutiny so as to impose discipline for minor offenses or performance deficiencies that would otherwise not result in discipline. It also includes negative work assignments, denial of leave, the "silent treatment," and other demeaning treatment. It is used by senior officers and supervisory personnel to compel compliance or suppression.

39.     By using the above-described tactics, Defendants were and are able to maliciously promote, ratify and condone a sexually severe, pervasive and hostile work environment as well as to perpetuate discrimination towards Plaintiff through a discriminatory effect and application of otherwise gender neutral employment rules and regulations concerning the terms and conditions of employment.

## **2017**

40.     Plaintiff was hired in or about January 2017 as a Police Officer with the GPD. She began her first day of field training with Field Training Officer ("FTO") Officer Defendant Dyana Albano on or about June 12, 2017. As FTO, Albano told Stein not to "sleep around" and to not report any instances of sexual harassment that she may witness or be subjected to.

41.     By way of example and during field training, FTO Albano told Plaintiff that a Sergeant had exposed his genitals to her while in a police vehicle, but that when she reported it, nothing was done to rectify it. Albano also told Stein to "watch out" for another officer (male) because he found Stein to be attractive.

42.    In or about June 2017, during her field training, Plaintiff mentioned her friend, Lisa O'Shea, an officer in another police department. Albano commented derisively that she knew 0' Shea and that "she's pretty … but she's gay."

43.    FTO Albano was injured two weeks into Stein's field training and Defendant Police Officer Frank Kozakiewicz replaced Albano as Plaintiff's FTO.

44.    As FTO, Defendant Kozakiewicz was in a supervisory position over Plaintiff not only responsible for training, but also for reporting her progress to Plaintiff's supervisors and command. From the time that Kozakiewicz became her FTO, he showed that he was interested in Plaintiff sexually. FTO Kozakiewicz would inappropriately discuss relationships and dating with Plaintiff. Other officers noticed and commented on FTO Kozakiewicz's uninvited sexual attention and obsession with Plaintiff. He would not allow any other officer to be her FTO.

45.    FTO Kozakiewicz, who was married, would repeatedly text Plaintiff after hours about non-job related topics and ask Plaintiff to go to dinner with him. He would frequently "like" Plaintiff's photos on Instagram in the early morning hours, and then "unlike" them in the morning. He would leave candy treats on her vehicle.

46.    FTO Kozakiewicz talked to Plaintiff about his marriage. He told Plaintiff that his wife was jealous of her, did not like them being paired together, and did not trust them. He also told Plaintiff intimate personal details about their relationship and towards the end of her field training, sent a gift basket to her home, addressed to her parents in an apparent attempt to entice Plaintiff into a romantic relationship with him. Throughout, Plaintiff was a professional in her interactions with Officer Kozakiewicz and made uncomfortable, dismayed and frightened by Kozakiewicz's unwanted attention.

47.     In or about September 2017, Plaintiff was assigned to drive with Officer Burnett, who asked about her "relationship" with Officer Kozakiewicz, insinuated that she encouraged Kozakiewicz's sexual fantasies about her, and that Kozakiewicz was having marital issues as a result.

48.     On or about September 27, 2017, Officer Kozakiewicz, who was still Plaintiff's FTO, learned that Plaintiff was bisexual and dating a woman. He became angry and disapproving of Plaintiff, complaining that she should have told him of her sexual orientation, and implying that he was jealous that she was dating a woman and not him.

49.     Even after Plaintiff was no longer in field training and supervised by Officer Kozakiewicz, he continued to talk about her to fellow officers in romantic and sexual terms which he claimed that he could not control.

**2018**

50.     Plaintiff was transferred to the midnight shift (12 midnight to 8 AM), commencing in or about January 2018. Her duties placed her on car patrol, by herself, and without a partner. When an officer on midnight shift approaches a vehicle, that officer calls it in to dispatch and the nearest patrol car is to respond in back-up. Throughout 2018, Plaintiff was the only female officer working the midnight shift.

51.     Defendant Police Officer Jeff Cerone who also worked midnights, had seniority over Plaintiff and acted as the de facto midnight shift supervisor, created a toxic discriminatory work environment for women on the job, did not believe that women should be police officers, and told other officers that he would make Plaintiff's life on the midnight shift "a living hell." As part of his scheme to discourage and discriminate against Plaintiff, Officer Cerone would ignore her during roll call and on the job at scenes, refusing to interact with her or engage in eye contact.

52.     Officer Cerone would regularly comment upon Plaintiff's body, telling her that she had to gain some weight and "bulk up." These comments were unsolicited and sexual in nature.

53.     Officer Cerone also texted Plaintiff, inquired about her personal relationships, questioned her about her sexual orientation and asked if she were going to the beach with her girlfriend in a "bikini and heels." Plaintiff reminded Cerone that he was married and that she did not wish to engage in this conversation, but he persisted in speaking with her in a sexual manner. Although Plaintiff told other officers about this incident, she was afraid to complain about this unwanted sexual behavior to her supervisors because of the de facto supervisory position that Cerone appeared to occupy and the favoritism that had been shown to him by her supervisors.

54.     In December 2018, Plaintiff patted down a female party for weapons in accordance with her police duties. Officer Cerone intensely watched her, looking at Plaintiff's body closely and appearing to be sexually aroused by watching Plaintiff touch a woman. When they left the scene, Officer Cerone referred to the incident by calling Plaintiff "groper," texted her about it and intimated that Plaintiff touched the female inappropriately for her own sexual pleasure.

55.     Officer Cerone's unwanted and unwarranted sexual comments directed towards and about Plaintiff were designed to and did denigrate her in the eyes of her fellow police officers and humiliated Plaintiff in the performance of her police duties.

### January 19, 2019 and Its Immediate Aftermath

56.     On January 19, 2019, during roll call before the commencement of the midnight shift, the officers were directed to retrieve new parking booklets from a box located on a desk behind Plaintiff. Plaintiff turned around to obtain the books as directed, bent over the desk,

11

and began to take several booklets. While she was doing this, Cerone ran towards her, grabbed her by the shoulders and forcefully pushed his genital area into her buttocks toppling over her and ramming himself into her. Cerone then pulled Plaintiff away from the desk and threw her towards the middle of the room, where she stumbled, losing her balance. Plaintiff was the only female in the room out of nine law enforcement officers that were present, including their supervisor Lieutenant Martin.

57.     Lieutenant Martin immediately asked Officer Cerone, "What the hell was that about?" Cerone joked, "Throwing books" and the remaining men in the room laughed. Martin again asked, "Jeff! What the fuck was that?" Cerone again laughed in response and stated, "I don't know." Lieutenant Martin cleared the room of everyone except Cerone and Plaintiff. As they left the room, the other police officers laughed and snickered, making sexual comments about Cerone "playing hard to get" and implying that Plaintiff and Cerone were in a sexual relationship.

58.     Plaintiff was directed to prepare a written report about Cerone. She was concerned about filing a formal complaint, afraid that the other officers would view her in a bad light because she reported one of their own.

59.     Plaintiff was also interviewed on January 19, 2019, by Lieutenant Martin and Sergeant Fernandez. She left her interview at approximately 3:00 AM. As Plaintiff was leaving Headquarters, she observed Officers Pilla and B. Doherty viewing body cam footage depicting the incident involving Cerone's assault on Plaintiff taken from Pilla's body camera. Plaintiff asked if the body cam footage would be provided to Lieutenant Martin, to which Pilla and Doherty replied that such footage would not be provided. Pilla was a PBA delegate at the time.

60.     An internal investigation ensued and every officer that had been present was ordered to write a statement about what had occurred and what they had seen. Upon information and belief, the Pilla body cam footage was not provided to Lieutenant Martin or Sergeant Fernandez and both Pilla and Doherty denied having seen the assault by Cerone upon Plaintiff. Each officer, with the exception of Officer Matthew Stein, Plaintiff's brother, falsely stated that he did not see the incident.

61.     The investigation resulted in Officer Cerone being lightly reprimanded. He was taken off the midnight shift and lost two weeks of vacation. He was found to have violated Section 301.01 (14) of the Rules, Regulations and Manual of Procedures because of his "[f]ailure to treat any person civilly and respectfully."

62.     Officer Cerone was never disciplined for sexually harassing another employee. The roomful of officers who laughed at Cerone's behavior were never chastised for their complicit behavior. A packet on workplace bullying was placed in a bin outside of the patrol desk and the incident was not addressed again.

63.     After Cerone was taken off midnights and when Plaintiff was not present, having taken a few days off after the incident, Defendant Sergeant Vlasaty handled roll call and announced to the officers his dissatisfaction with Cerone being taken off the midnight shift, that Cerone was an asset and would be sorely missed.

64.     Sergeant Vlasaty further expressed that he was angry that Cerone was written up for his behavior towards Plaintiff and proclaimed to her supervisors that she should have been written up as well, although she had done nothing to encourage Cerone, nor anything that was deserving of a reprimand. Privately, Vlasaty spoke to Plaintiff and told her that Cerone was "a good guy."

65.     When Plaintiff returned to work, three of her supervisors, Defendants Lieutenant Gramaglia, Sergeant Grady and Sergeant Rodriguez, stopped speaking to her, isolating her because of her complaint against Cerone. Additionally, throughout 2019, Plaintiff was repeatedly placed on "6 Post," known to be the most dangerous and least favorable post where the majority of violent crimes were conducted, as a punishment for her complaint.

66.     Retaliation for her complaint against Cerone continued throughout 2019. The officers on the midnight shift stopped talking to Plaintiff, ignored her and would not direct any conversation toward her. They ostracized Plaintiff and refused to include her in social interactions. Additionally, after the incident with Cerone, units would not respond when she called in for back up or intentionally delayed their response time to assist Stein on calls, placing her life in danger.

67.     Officers J. Vlasaty (brother to Sergeant Vlasaty) and Pisicano joked about the incident, that Plaintiff had to "learn how to take a hit" and that was how to "get off of midnights." She was chastised by her fellow officers about including sexual harassment complaints in her report about Cerone's behavior towards her.

68.     The sexual assault that Plaintiff endured on January 19, 2019, was re-cast by Plaintiff's co-workers into claims that Plaintiff was a "bad cop," a "drama queen" and that Cerone was wrongly accused. According to this concocted and fantastical version of the events, Cerone only brushed by Plaintiff, never physically assaulted her and her complaint about him only demonstrated why women should not be in law enforcement.

### Continuing Discriminatory and Retaliatory Acts Including Interference with Plaintiff's Efforts to Transfer To Another Police Department

69.     Commencing in or about March 2019 and continuing, Plaintiff applied to several different police departments in an attempt to transfer out of Greenburgh and get away

from the toxic discriminatory work environment that she encountered there, made only worse by the retaliatory actions taken against her upon her complaint about the discrimination that she experienced while working there.

70.     Plaintiff was rebuffed in each location, apparently in a concerted effort to retaliate against Plaintiff for filing a complaint against Officer Cerone. She applied to Irvington Police Department on March 4, 2019, inquiring about job openings but was falsely told by Chief Cerone (uncle to Officer Cerone) of the Irvington Police Department that there were no openings.

71.     Plaintiff also applied to the Mamaroneck Police Department and had a formal interview with high-ranking officials of the Department on or about July 15, 2019. However, during the week of on or about July 15, 2019, she was told that she did not get the job and that someone else was hired to fill the position. Upon information and belief, Officer Cerone bragged to other police officers in Greenburgh that he had placed a call to a "friend" with the Mamaroneck Police Department to ensure that Plaintiff did not get the job.

72.     Plaintiff also applied to the Westchester County Police Department and on November 26, 2019, was notified by phone that she got the job. She underwent additional screenings related to the new position which was to commence on December 30, 2019.

73.     On December 9, 2019, Plaintiff told her supervisors at a face to face meeting including then-Chief Ryan and Lieutenant Powell that she was transferring to the Westchester County Police Department. When questioned as to why she was leaving, Plaintiff referenced the discriminatory conduct and sexual harassment that she was experiencing in the Department. She also told them that she feared for her safety because the other officers were not responding to her when she needed back-up on the job. Her concerns were not treated seriously and went

unanswered. The meeting was not treated confidentially and within hours, the Department knew that she was leaving.

74.     On or about December 17, 2019, the offer of employment with the Westchester County Police Department was rescinded. Plaintiff left a phone message with Defendant Lieutenant Powell, requesting a further meeting with him and Chief Ryan to discuss that the offer had been rescinded. Plaintiff did not receive a phone call back.

75.     Upon information and belief, former Greenburgh Police Chief McNerney who was then working as Chief Criminal Investigator with the Westchester County District Attorney Anthony Scarpino had placed a call to the Westchester County Police Commissioner and said not to hire Plaintiff as she is a "sexual harassment liability."

76.     On or about January 2020, Plaintiff was ordered to Lieutenant Powell's office after working a midnight tour. He advised Plaintiff that there was going to be an internal investigation regarding other officers not backing her up. Plaintiff requested that her PBA representative be present (a request that was granted) and questioned why she had not yet had a meeting with him and Chief Ryan. Lieutenant Powell responded that there was "nothing [he could] can do about that," but that she was required to assist in the investigation.

77.     Plaintiff feared further retaliation if the second investigation went forward but Powell threatened to discipline her if she did not write a statement naming every person and incident when she was not assisted. She wrote the statement but had never been advised of the result of the investigation, other than in response to the EEOC Charge that she subsequently filed.

### Further Discriminatory and Retaliatory Acts

78.     From January through March 2020, FTO Albano continued to train new hires to the Department. She spoke to female new hires about Plaintiff's sexual orientation and that

she was bisexual and dating a woman. Albano also spoke to them about Plaintiff's complaint about Officer Cerone physically assaulting her on January 19, 2019 in front of her squad, casting doubt on Plaintiff's truthfulness about what had occurred and implying that it never happened.

79.     Throughout Plaintiff's employment and on numerous occasions up through and including 2020, male police officers would display pornographic and obscene photos to her, asking if she thought that the women displayed were "hot" and describe their own sexual encounters to her.

80.     Additionally, in February 2020, Albano took it upon herself to poison the working relationship Plaintiff had with the Community Affairs Unit of the GPD that had been interested in transferring Plaintiff to that Unit. Albano approached Officer Zenon of that Unit and falsely complained about Plaintiff's work ethic and claimed that she could not be trusted, in a veiled reference to Plaintiff's sexual harassment complaint about Cerone.

81.     In or around July 2020, Chief McNerney, who had been Greenburgh Chief of Police before becoming Chief Criminal Investigator under the Westchester County District Attorney in 2019, returned to his former place of employment as Chief of Police of the GPD.

82.     Plaintiff filed her EEOC Charge in or about August 2020. Shortly thereafter, the Town commenced an investigation which resulted in those named in the Charge being interviewed and it became common knowledge in the GPD that Plaintiff had filed such a Charge.

83.     In or about August 15, 2020, Officer Kozakiewicz was at the front desk of Police Headquarters discussing Plaintiff with Sergeant Basulto and Officer Zenon. Sergeant Basulto told Officer Zenon that Plaintiff was not trustworthy, to watch out for her and falsely

asserted that she was not answering calls on her post. Officer Kozakiewicz agreed that Plaintiff was untrustworthy, adding that she "recorded everyone and everything" in an obvious reference to the detail of her EEOC Charge.

84.     In or around September 2020, Chief McNerney addressed Plaintiff's squad, the last squad he addressed upon his return to GPD. He noticed Plaintiff in the group and became visibly unnerved, and refused to look at her.  He addressed the assembled squad, advised that the GPD was experiencing a hiring freeze, that their budget was reduced by $1.2 million, warned that anyone could obtain police records through the New York Freedom of Information Law and that the Town Board had had an emergency meeting the prior evening. Upon information and belief, that meeting involved the EEOC Charge that had been filed by Plaintiff.

85.     During a roll call on or about September 30, 2020, Sergeant Cookingham addressed both the civilian paramedics (who are also part of the GPD) as well as the patrolmen, telling the squad that as per Chief McNerney an officer had sued the GPD as a result of an employment issue. Upon information and belief, the only current claims being made by an officer against GPD are the claims being made by the Plaintiff.

86.     Upon information and belief, those in the room knew and believed that it was Plaintiff's EEOC Charge at issue and comments were made that the Charge was an attempt by Plaintiff to orchestrate a transfer to the Community Affairs Unit of the GPD. Neither Sergeant Cookingham, nor any of Plaintiff's supervisors, made any effort to correct that misinformation or to protect Plaintiff's right to file an EEOC Charge without adverse consequences.

87.     On October 5, 2020, Plaintiff was involved in a motor vehicle accident that occurred while she was on patrol and operating a GPD vehicle. The accident was caused when

another motor vehicle drove through a stop sign, turned into Plaintiff's lane, attempted to make an illegal U-Turn over four lanes while crossing the double yellow line and struck her vehicle. The force of the impact caused airbags on the GPD vehicle to deploy and Plaintiff sustained significant physical injuries. As a result of those injuries, she did not return to work until December 9, 2020.

88.     Upon her return to work, Plaintiff experienced continued retaliatory treatment from her supervisors, fellow officers and even the civilian dispatchers. She was transferred from the 7 Post where she had previously been stationed to the 6 Post, which is widely recognized in the Department as the most rookie and undesirable post.

89.     Plaintiff was called out by the civilian dispatchers excessively, to non-urgent calls at other people's posts, when she was on bathroom and meal breaks, and to late calls to ensure that she would not get out of work on time.

90.     The retaliatory actions were noticed by fellow Officers, who would not speak out against sexual harassment because they saw how Plaintiff was singled out to receive such discriminatory treatment, and feared that they too would be subject to such treatment.

91.     On or about December 11, 2020, Officer Marzella addressed roll call as a PBA Delegate and told the entire squad, including supervisors that they were unable to negotiate a raise because of pending lawsuits, an obvious reference to Plaintiff's EEOC Charge, and designed to further alienate and ostracize her from her co-workers.

92.     On December 21, 2020, Plaintiff was ordered by Lieutenant Powell to headquarters to speak with Captain Farina. Captain Farina ordered Plaintiff to write a supplemental report explaining why she took an emergency personal day on December 12, 2020. Captain Farina told Plaintiff that writing the supplemental report was "just protocol." However, Plaintiff was told by

PBA President DeVito that contrary to Captain Farina's false assurances, the supplemental report was not required by protocol.

93.     Additionally, during December 2020, Officer Cerone intimidated younger officers, telling them not to vote for Sergeant Fernandez, who was running to be PBA Vice President, complaining that he "gets everyone jammed up," in obvious reference to the support that he had given Plaintiff in her claim against him for discrimination and sexual harassment.

94.     Plaintiff reported all of this continued retaliatory treatment to the PBA President, Ed DeVito, on December 27, 2020, who stated that he would speak with Patrol Captain Farina and Sergeant Rodriguez.

95.     The very next day, on December 28, 2020, without prior notice and contrary to Greenburgh Police Department Rules and Regulations, Plaintiff was called on the GPD Radio while she was out on patrol and directed to return to headquarters for a meeting.

96.     Plaintiff arrived at headquarters where she was greeted by PBA President DeVito, who attended the meeting with her. She was only then informed that she was being interviewed by her Patrol Captain Farina and the Special Investigations Unit Lieutenant Kobie Powell as part of an investigation regarding the October 5, 2020 accident, with a view to possible reprimand and/or punishment.

97.     Plaintiff was advised by DeVito that although a meeting with Captain Farina after being in an on-duty accident was not uncommon, it was unusual for such a meeting to occur where, as here, it was an officer's first accident.

98.     A few days later, on January 5, 2021 – and contrary to the Rules and Regulations – Plaintiff was again summoned to Captain Farina's Office with no advance notice and handed a Letter of Supervisory Notice regarding the October 5, 2020 accident. The Letter referenced her

speed but not the defensive maneuvers she took to avoid the accident or the illegal and reckless acts of the other vehicle involved and stated that further "procedural violations [would] not be tolerated" and could result in punitive discipline.

99.     Plaintiff signed the Letter under duress.

100.    Upon information and belief, the "investigation" and resulting Letter of Supervisory Notice were designed to intimidate and retaliate against Plaintiff for her filing of the EEOC Charge and her report to her PBA President of the continuing retaliation that she was experiencing.

101.    On or about January 21, 2021, Plaintiff was asked to play on the PBA softball team. However, shortly thereafter Plaintiff was notified that several PBA members had expressed that they would not participate if Plaintiff also played on a team, further isolating her from her fellow officers in the GPD.

102.    In or about February 2021, Plaintiff spoke with a paramedic outside the Greenburgh Public Library while they were both on duty and asked how she was following a recent death in her family. Paramedics are employed by the Town of Greenburgh under the auspices of the GPD. Upon information and belief, Sergeant Cookingham observed Plaintiff speaking with the paramedic and the following day entered Dispatch located in Police Headquarters and publicly questioned the paramedic as to why she was speaking to Plaintiff. This public questioning was designed to intimidate the paramedic and cause her to not speak to Plaintiff and isolate Plaintiff further in her place of employment, all in retaliation for filing an EEOC Charge.

103.    On or about April 16, 2021, Plaintiff began her menstruation cycle while she was on patrol. She rushed to Police Headquarters to go to the bathroom because she was concerned about staining her underwear and uniform. She used the vehicle's computer to place herself on a

personal break so that she could use the bathroom. Plaintiff received a call on her radio by Lieutenant Matthews who ordered that she leave her personal break and go out on a call. Plaintiff was not able to attend to her needs occasioned by having suddenly gotten her period.

104.    Later that day, Plaintiff was ordered back to headquarters and told by Matthews that she was not allowed to use the bathroom when there was a call.  Plaintiff told him that she had just gotten her period and that was why she had to return to Headquarters to use the bathroom. Matthews made a disgusted face and said "I don't need to hear that." Plaintiff responded that she just wanted to explain herself to which Matthews responded, "You don't need to tell me that. You can use the bathroom now if you need to."

105.    The following day, April 17, 2021, Plaintiff reported to her immediate supervisors, Lieutenant Gramaglia and Sergeant Fernandez about what had transpired the previous day with Lieutenant Matthews. They advised that she did not have to worry, that she would not be in trouble, that she was a good worker and that she should "let it go."

106.    On April 20, 2021, Plaintiff was called into Captain Farina's office and advised that Lieutenant Matthews had written her up for being disrespectful. Captain Farina further advised that the investigation would be changed to reflect that Plaintiff had not asked for permission to use the bathroom. Plaintiff was then called by Lieutenant Powell and she told him in the presence of her PBA President DeVito that she was being retaliated against for having filed an EEOC complaint. Plaintiff was also ordered by Lieutenant Powell to complete a supplemental report regarding her use of the bathroom but did not say when the supplemental report had to be provided.

107.    The following day, April 21, 2021, was Plaintiff's day off. Lieutenant Powell called her twice to ask her for her supplemental report.  The report was prepared and returned to Police Headquarters on April 21, 2021. While in Police Headquarters on her day off, Plaintiff was ordered

to attend an interview with Farina, Powell and DeVito where she was reprimanded for not returning the completed supplemental report in a prompt manner. Plaintiff reiterated her complaint that she was being retaliated against for having filed an EEOC Charge; that she was the subject of constant write ups and unfair treatment since the filing of the EEOC Charge and getting into trouble for doing things that other officers do. Farina dismissed Plaintiff's concerns and ended the interview.

108.    On June 15, 2021, Plaintiff received two Letters of Supervisory Notice from Captain Frank Farina. One was in reference to Plaintiff using the bathroom on April 16, 2021, when she had suddenly begun her menstruation cycle. The second Letter of Supervisory Notice was in reference to Requests for Commendation for herself that Plaintiff had written and provided to the Commendation Board on April 14, 2021 related to incidents that occurred on July 13, 2019 and July 14, 2020. Plaintiff was reprimanded for purported differences between her Requests and video and audio recordings of the incidents.

109.    Upon information and belief, these latest disciplinary actions are retaliatory. Plaintiff is scrutinized at a heightened level and held to a different standard than the men in the GPD.

110.    Upon information and belief, the discriminatory and retaliatory conduct and hostile work environment extend beyond the acts taken directly against Plaintiff to her brother, Officer Matthew Stein and Sergeant Tony Fernandez.   Officer Matthew Stein had been passed over repeatedly for positions within the Department for which he was highly qualified and where there are currently openings. Sergeant Fernandez, who had supported Plaintiff in her sexual harassment complaint against Officer Cerone, has been targeted by Officer Cerone, with the knowledge of his supervisors, as a "bad guy" for writing him up in connection with his actions against Plaintiff.

111.     Plaintiff claims a continuous practice of discrimination and makes all claims herein under the continuing violations doctrine.

112.     As a result of Defendants' unlawful and discriminatory actions, Plaintiff has been extremely humiliated, degraded, victimized and embarrassed resulting in extreme emotional distress, severe depression, severe anxiety, mental anguish and physical ailments.

113.     As a result of Defendants' unlawful and discriminatory actions, Plaintiff has suffered and endured irreparable damage to her professional reputation.

114.     Defendants' discriminatory conduct as aforesaid so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of GPD's violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries. Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, and other compensation which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Plaintiff further claims aggravation, activation and/or exacerbation of any preexisting condition.

115.     Defendants' actions were malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants, jointly and severally.

### FIRST CAUSE OF ACTION UNDER TITLE VII
### For Discrimination Based Upon Gender and Sexual Orientation

116.     Plaintiff repeats, realleges and incorporates each and every allegation in paragraphs 1 through 115 of this Complaint with the same force and effect as if fully set forth herein.

117.    Plaintiff alleges that Defendant Town through its agents engaged in a pattern and practice of discrimination against her with respect to the terms, conditions and privileges of employment because of Plaintiff's gender and sexual orientation in violation of 42 U.S.C. § 2002e-2.

118.    As part of its pattern and practice of employment discrimination, defendant Town, through its agents treated Plaintiff in a manner indicative of gender and sexual orientation discrimination.

119.    Defendant Town, through its agents, knew or should have known about the gender and sexual orientation discrimination in the workplace.

120.    Defendant Town, through its agents, failed and refused to take appropriate action to end the discriminatory treatment and conditions which Plaintiff was subjected to, which was clearly motivated by gender and sexual orientation in a clear demonstration of bad faith, and acted with malice and in reckless disregard of Plaintiff's rights under Title VII.

121.    Defendant Town through its agents acted with deliberate indifference to the protections and mandates of Title VII.

122.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

123.    Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

## SECOND CAUSE OF ACTION UNDER TITLE VII
### For Sexual Harassment

124.    Plaintiff repeats, realleges and incorporates each and every allegation in paragraphs 1 through 123 of this Complaint with the same force and effect as if fully set forth herein.

125.    Plaintiff alleges that Defendant Town through its agents engaged in a pattern and practice of sexual harassment against her with respect to the terms, conditions, and privileges of employment because of Plaintiff's gender and sexual orientation in violation of 42 U.S.C. §2002e-2.

126.    As part of its pattern and practice of employment discrimination, Defendant Town, through its agents subjected Plaintiff to sexual harassment and failed to take corrective action.

127.    Defendant Town, through its agents, knew or should have known about the sexual harassment in the workplace.

128.    Defendant Town, through its agents, failed and refused to take appropriate action to end the sexual harassment to which Plaintiff was subjected, which was clearly motivated by gender and sexual orientation in a clear demonstration of bad faith, and acted with malice and in reckless disregard of Plaintiff's rights under Title VII.

129.    Defendant Town through its agents acted with deliberate indifference to the protections and mandates of Title VII.

130.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

131.    Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

## THIRD CAUSE OF ACTION UNDER TITLE VII
### For Hostile Work Environment

132.    Plaintiff repeats, realleges and incorporates each and every allegation in paragraphs 1 through 131 of this Complaint with the same force and effect as if fully set forth herein.

133.    Plaintiff alleges that Defendant Town through its agents created and condoned a hostile work environment against Plaintiff in violation of Title VII.

134.    In taking the above-described actions, Defendants acted with malice and in reckless disregard of Plaintiff's rights under Title VII.

135.    Defendants' discriminatory and harassing acts were such that a reasonable person in Plaintiff's position would have perceived the work environment to be hostile, abusive or offensive and Plaintiff actually perceives the work environment to be hostile, abusive or offensive.

136.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well

as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

137.    Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

## FOURTH CAUSE OF ACTION UNDER TITLE VII
### For Retaliation

138.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs 1 through 137 of this Complaint with the same force and effect as if fully set forth herein.

139.    This claim is also authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., for relief based upon the unlawful employment practices of the Defendant Town through its agents in retaliating against Plaintiff for complaining about and filing complaints for discrimination and retaliation on the basis of sex.

140.    The acts which Plaintiff complains of herein supporting her claim for retaliation took place as a result of and in retaliation for, including but not limited to, complaining to her supervisors about the discriminatory conduct towards her, filing internal reports, and filing an EEOC Charge of Discrimination.

141.    Defendant Town through its agents knew or should have known that Plaintiff's supervisors and co-workers were harassing her in retaliation for making a sexual harassment

complaint against Officer Cerone and subsequent complaints of continuing sexual harassment and retaliation.

142.   Defendant Town through its agents acted negligently in response to the retaliation, failing to halt the harassment or to take any corrective action.

143.   Defendant Town through its agents acted with malice and in reckless disregard of the protections and mandates of Title VII.

144.   Defendant Town through its agents acted with deliberate indifference to the protections and mandates of Title VII.

145.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a loss of income, benefits, as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

146.   Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

### FIFTH CAUSE OF ACTION UNDER 42 U.S.C. §1983
### For Discrimination Based Upon Gender and Sexual Orientation

147.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs 1 through 146 of this Complaint with the same force and effect as if fully set forth herein.

148.   Plaintiff alleges that the Defendants through their agents, while acting under color of law, intentionally subjected Plaintiff to discrimination on account of her gender and

sexual orientation and engaged in a pattern and practice of discrimination against her in violation of 42 U.S.C. §1983.

149.     As part of their pattern and practice of discrimination, Defendants through their agents treated Plaintiff in a manner indicative of gender and sexual orientation discrimination, with respect to their failure to take corrective action. Defendant Town, through its agents, knew or should have known about the gender and sexual orientation discrimination.

150.     Defendants failed and refused to take appropriate action to end the discriminatory treatment and conditions to which Plaintiff was subjected, which was clearly motivated by gender and sexual orientation in a clear demonstration of bad faith and acted with malice and in reckless disregard of Plaintiff's rights under the First and Fourteenth Amendments.

151.     Defendant Town through its agents acted with deliberate indifference to the protections and mandates of the First and Fourteenth Amendments.

152.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

153.     Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

## SIXTH CAUSE OF ACTION UNDER 42 U.S.C. §1983
### For Sexual Harassment As Against All Individual Defendants

154.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs 1 through 153 of this Complaint with the same force and effect as if fully set forth herein.

155.   Plaintiff alleges that all Defendants through their agents, while acting under color of law, engaged in a pattern and practice of sexual harassment against her in violation of 42 U.S.C. §1983.

156.   As part of its pattern and practice of discrimination, all individual Defendants treated Plaintiff in a manner indicative of sexual harassment, with respect to their failure to take corrective action.

157.   All individual Defendants knew or should have known about the sexual harassment in the workplace.

158.   All individual Defendants failed and refused to take appropriate action to end the sexual harassment to which Plaintiff was subjected, which was clearly motivated by gender and sexual orientation in a clear demonstration of bad faith, and acted with malice and in reckless disregard and deliberate indifference to Plaintiff's constitutional rights.

159.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

160.    Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

## SEVENTH CAUSE OF ACTION UNDER 42 U.S.C. §1983
### For Retaliation

161.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs 1 through 160 of this Complaint with the same force and effect as if fully set forth herein.

162.    Plaintiff alleges that all individual Defendants through their agents, while acting under color of law, engaged in a pattern and practice of retaliation against Plaintiff as a result of her complaining about the sexual harassment and discriminatory treatment in violation of 42 U.S.C. §1983.

163.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

164.    Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

## EIGHTH CAUSE OF ACTION UNDER 42 U.S.C. §1983
### For Hostile Work Environment

165.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs 1 through 164 of this Complaint with the same force and effect as if fully set forth herein.

166.    Plaintiff alleges that all individual Defendants through their agents, while acting under color of law, created and condoned a hostile work environment against Plaintiff in violation of 42 U.S.C. §1983.

167.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

168.    Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

## NINTH CAUSE OF ACTION UNDER 42 U.S.C. §1983
### For Unfair Discipline Against Kobie Powell, Brian Matthews and Frank Farina

169.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs 1 through 168 of this Complaint with the same force and effect as if fully set forth herein.

170.    Plaintiff alleges that Defendants while acting under color of law, unfairly disciplined Plaintiff and denied her equal protections of the law in violation of 42 U.S.C. §1983.

171.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

172.    Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

## TENTH CAUSE OF ACTION UNDER 42 U.S.C. §1983
### For Violation of Equal Protection and Denial of Due Process
### Against All Individual Defendants

173.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs 1 through 172 of this Complaint with the same force and effect as if fully set forth herein.

174.    The individual Defendants have embarked on a course of conduct while acting under color of law that deprived Plaintiff of her rights under the United States Constitution, Federal and state law.

175.    The facts and circumstances cited above with reference to the Constitution and other civil rights violations suffered by Plaintiff are examples of Defendants' violations of Plaintiff's civil rights.

176.    The actions of Defendants, acting under color of state and local law, custom and usage, have deprived Plaintiff of her rights, privileges and immunities under the laws and

Constitution of the United States, and on particular, her rights to due process under the First and Fourteenth Amendments.

177.    By these actions, Defendants have jointly and severally deprived Plaintiff of her rights under the First and Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. §1983.

178.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

179.    Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

**ELEVENTH CAUSE OF ACTION FOR MONELL VIOLATION UNDER 42 USC §1983**
**As Against Defendants Town, Brian Ryan, Chris McNerney, Robert Gramaglia, Kobie Powell, Brian Matthews, Frank Farina, Frank Basulto, Eric Vlasaty, Patrick Grady and Michael Cookingham**

180.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs 1 through 179 of this Complaint with the same force and effect as if fully set forth herein.

181.    At all times material to this Complaint, the Town and GPD had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

182.   At all times material to this Complaint, the Town and GPD failed to properly train, screen, supervise or discipline employees and police officers, and failed to inform the individual Defendants' supervisors of their need to train, screen, supervise or discipline the individually named Defendants.  The policies, practices, customs and usages were a direct and proximate cause of the unconstitutional conduct alleged herein, causing injury and damage in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First and Fourteenth Amendments.

183.   All of the foregoing acts deprived Plaintiff of federally protected constitutional rights.

184.   Defendants, individually and collectively, while acting under color of state law, engaged in conduct that constituted a procedure, custom, usage, practice, rule and/or regulation of the municipal authority Town that violates the Constitution of the United States.

185.   In addition, the Town and the GPD engaged in a practice, policy or custom of inadequate screening, hiring, investigation, retaining, training and supervision of its employees that was the moving force behind the violation of the Plaintiff's rights as described in this Complaint, by reason of the failure of the Town to properly recruit, screen, train, discipline and supervise its officers, including the individual Defendants.

186.   That the Town and GPD have tacitly ratified and authorized the conduct complained of and have displayed deliberate indifference to the acts and conduct complained of herein.

187.   That the Town and GPD through a policy, practice or custom, directly caused the constitutional violations suffered by the Plaintiff.

188.     The foregoing customs, policies, practices, procedures and rules of the Town and GPD constituted deliberate indifference to the safety, well-being and constitutional rights of the Plaintiff.

189.     The failure to act by the Town and GPD resulted in a violation of Plaintiff's constitutional rights.

190.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

191.     Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

## TWELFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER NYSHRL §296 (1)
### As Against All Defendants

192.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs 1 through 191 of this Complaint with the same force and effect as if fully set forth herein.

193.     The acts committed by these Defendants as set forth at length in paragraphs 1 through 191 of this Complaint, which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Plaintiff based on her sex in violation of NYSHRL §296.

194.    Plaintiff, a woman, is a member of a protected class.

195.    The acts which Plaintiff complains of herein supporting her claims for discrimination took place as a result of her membership in a protected class and all took place while she was an employee of the Town and in the course of her employment.

196.    The acts and conduct complained of herein supporting Plaintiff's claims for discrimination were committed by Town and GPD personnel who possessed and maintained direct supervisory authority over Plaintiff, and for whose acts the Town and GPD is liable.

197.    The acts and conduct complained of herein supporting Plaintiff's claims for discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of Plaintiff's employment.

198.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of Defendants' conduct upon Plaintiff's employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

199.    Defendants' discriminatory conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

200.    As a direct and proximate result of Defendants' violation of Plaintiff's rights under the NYSHRL, Defendants are liable to Plaintiff for lost income, benefits, and compensatory damages pursuant to §297(4) (c) (iii) of the NYSHRL in an amount to be determined at trial.

201.   Plaintiff also seeks the imposition of the maximum civil fines and penalties against Defendants pursuant to §297(4)(c)(vi) of the NYSHRL for their willful, wanton, and malicious conduct.

202.   Plaintiff therefore seeks judgment on the Third Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements, and the imposition of the maximum civil fines and penalties under the NYSHRL.

### THIRTEENTH CAUSE OF ACTION FOR UNLAWFUL CONDUCT UNDER NYSHRL §296 (6)
#### As Against All Defendants

203.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs 1 through 202 of this Complaint with the same force and effect as if fully set forth herein.

204.   The individual defendants, by engaging in the conduct set forth at length in paragraphs "1" through 202 of this Complaint, which are all deemed a part of this cause of action, incited, compelled, aided and abetted in the violation of the New York State Human Rights Law.

205.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of Defendants' conduct upon Plaintiff's employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

206.    Defendants' discriminatory conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

207.    As a direct and proximate result of Defendants' violation of Plaintiff's rights under the NYSHRL, Defendants are liable to Plaintiff for lost income, benefits, and compensatory damages pursuant to §297(4) (c) (iii) of the NYSHRL in an amount to be determined at trial.

208.    Plaintiff also seeks the imposition of the maximum civil fines and penalties against Defendants pursuant to §297(4)(c)(vi) of the NYSHRL for their willful, wanton, and malicious conduct.

209.    Plaintiff therefore seeks judgment on the Fourth Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements, and the imposition of the maximum civil fines and penalties under the NYSHRL.

## FOURTEENTH CAUSE OF ACTION FOR UNLAWFUL AND RETALIATORY CONDUCT UNDER NYSHRL §296 (7)
### As Against All Defendants

210.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs 1 through 209 of this Complaint with the same force and effect as if fully set forth herein.

211.    The acts committed by Defendants as set forth at length in paragraphs "1" through 209 of this Complaint, which are all deemed a part of this cause of action, constitute unlawful and retaliatory conduct against Plaintiff in violation of her rights under §296 (7) of the NYSHRL.

212.    The acts which Plaintiff complains of herein supporting her claim for retaliation took place as a result of and in retaliation for, including but not limited to, complaining to her supervisors about the discriminatory conduct towards her and filing a Charge of Discrimination.

213.    As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

214.    Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

215.    As a direct and proximate result of Defendants' violation of Plaintiff's rights under the NYSHRL, Defendants are liable to Plaintiff for her lost income, benefits, and compensatory damages pursuant to NYSHRL §297(4)(c)(iii) in an amount to be determined at trial.

216.    Plaintiff also seeks the imposition of the maximum civil fines and penalties against Defendants pursuant to §297(4)(c)(vi) of the NYSHRL for its willful, wanton, and malicious conduct.

217.    Plaintiff therefore seeks judgment against Defendants on the Fifth Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements, and the imposition of the maximum civil fines and penalties under the NYSHRL.

## PRAYER FOR RELIEF

**WHEREFORE.** Plaintiff respectfully requests that this Court:

(a)  Declare the acts and practices complained of herein are in violation of 42 U.S.C. §1983, Title VII and the NYSHRL;

(b) Enjoin and permanently restraining these violations of 42 U.S.C. §1983, Title VII and the NYSHRL;

(c) Direct Defendants to take such affirmative action as is necessary to ensure that the effect of these unlawful employment practices is eliminated;

(d) Find that Defendants discriminated against Plaintiff in violation of 42 U.S.C. §1983, Title VII and the NYSHRL; and

(e) Enter judgment, against Defendants, where applicable, for all compensatory, emotional, physical, and punitive damages (where applicable), lost pay, front pay, injunctive relief, and any other damages permitted by law.  It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action together with such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to FRCP 38 (b), Plaintiff demands a trial by jury.

Dated: White Plains, New York
        June 30, 2021

MURTAGH, COSSU, VENDITTI
& CASTRO-BLANCO LLP

By: Denise M. Cossu (DC 6900)
1133 Westchester Avenue. N-202
White Plains, New York 10604
(914) 288-9595
(914) 831-6248 (Direct)
*Attorneys for Plaintiff*
Kristin Stein

# Exhibit A



**U.S. Equal Employment Opportunity Commission**
**New York District Office**

33 Whitehall Street
5th Floor
New York, NY 10004
(929) 506-5270
TTY (800) 669-4000
FAX (212) 336-3625
1-800-669-4000

Respondent: TOWN OF GREENBURGH POLICE DEPARTMENT
EEOC No: 520-2020-03623

Via Email:
tlewis@greenburghny.com
stein.kristin@hotmail.com

Kristin Stein
1 Wood Avenue
Ardsley, NY 10502

Dear Ms. Stein:

The Equal Employment Opportunity Commission has received your request for a Notice of Right to Sue in the above referenced charge.

Your request has been forwarded to the U.S. Department of Justice (DOJ) for action. That Agency will act on your request and issue the Notice directly to you.

If you have any questions, please call this office at (929) 506-5270.

On behalf of the Commission:

March 30, 2021        Dolanda Young

Digitally signed by Dolanda Young
DN: cn=Dolanda Young, o=EEOC, ou=NYDO,
email=dolanda.young@eeoc.gov, c=US
Date: 2021.03.30 16:33:47 -04'00'

Date            Judy A. Keenan
Director

cc:    Denise Cossu, Esq.
      GAINES, NOVICK, PONZINI, COSSU & VENDITTI, LLP
      1133 Westchester Ave N202
      White Plains, NY 10604

Exhibit B

U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

June 08, 2021

Ms. Kristin Stein
c/o Denise Cossu, Esquire
Law Offices of Gaines, Novick, et al.
1133 Westchester Ave., N202
White Plains, NY 10604

Re: EEOC Charge Against Town of Greenburgh, Police Dept.
   No. 520202003623

Dear Ms. Stein:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Kristen Clarke
Assistant Attorney General
Civil Rights Division

by      /s/ Karen L. Ferguson
      Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: New York District Office, EEOC
   Town of Greenburgh, Police Dept.