UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KRISTIN STEIN,

                         Plaintiff,

           -against-

TOWN OF GREENBURGH, et al.,

                      Defendants.

**OPINION AND ORDER**

21-CV-05673 (PMH)

PHILIP M. HALPERN, United States District Judge:

Kristin Stein ("Plaintiff") brings this action against the Town of Greenburgh ("Town"),

Interim Chief of Police Brian Ryan ("Ryan"), Chief of Police Chris McNerney ("McNerney"),

Lieutenant Robert J. Gramaglia ("Gramaglia"), Lieutenant Kobie Powell ("Powell"), Lieutenant

Brian Matthews ("Matthews"), Police Officer Frank Farina ("Farina"), Sergeant Dennis Basulto

("Basulto"), Sergeant Eric Vlasty ("Vlasty"), Sergeant Patrick T. Grady ("Grady"), Sergeant

Michael Cookingham ("Cookingham"), Sergeant Alex Rodriguez ("Rodriguez"), Police Officer

Jeff Cerone ("Cerone"), Police Officer John Pilla ("Pilla"), Police Officer Brian Doherty

("Doherty"), Police Officer Dyana Albano ("Albano"), and Police Officer Frank Kozakiewicz

("Kozakiewicz" and collectively, "Defendants").[1] (Doc. 69, "FAC"). Plaintiff brings 14 claims for

---

[1] Defendants in this case are represented by three sets of counsel, each of whom has filed their own motion to dismiss. Defendant Gramaglia, represented by Wilson, Bace, Conboy, Cozza & Couzens, P.C., filed an Answer to the First Amended Complaint on April 8, 2022 and is moving to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or in the alternative for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Doc. 74, Doc. 76, Doc. 77). Defendants Matthews, Basulto, Vlasty, Cookingham, Rodriguez, Cerone, Pilla, Doherty, Albano, Kozakiewicz, and Grady (the "Individual Officer Defendants"), represented by Piscionere & Nemarow, P.C., filed an Answer to the First Amended Complaint on April 8, 2022 and are likewise moving to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or in the alternative for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Doc. 75, Doc. 78, Doc. 79). Defendants Town of Greenburgh, Ryan, McNerney, Powell, Farina (the "Town Defendants"), represented by the Law Office of Vincent Toomey, are moving to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 80, Doc. 81).

relief, spread across three statutory regimes, against one or more Defendants. Plaintiff asserts claims for discrimination, sexual harassment, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*; and 42 U.S.C. § 1983.[2]

Plaintiff filed the First Amended and Supplemental Complaint on March 3, 2022. (Doc. 69, "FAC"). The Individual Officer Defendants and Defendant Gramaglia filed separate Answers to the FAC on April 8, 2022. (Doc. 74, Doc. 75). Pending presently before the Court are: (i) the Individual Officer Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and, in the alternative, for judgment on the pleadings pursuant to Rule 12(c); (ii) Defendant Gramaglia's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and, in the alternative, for judgment on the pleadings pursuant to Rule 12(c); and (iii) the Town Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 76, Doc. 77, Doc. 78, Doc. 79, Doc. 80, Doc. 81, Doc. 82, Doc. 83 ("Defs. Br."), Doc. 84 ("Pl. Br."), Doc. 88 ("Reply"), Doc. 89, Doc. 90, Doc. 91). Defendants' motions seek the dismissal of Plaintiff's Title VII (Claims 1-4) and NYSHRL (Claims 12-14) claims.

---

[2] The FAC presses the following claims for relief: (1) Title VII claim for discrimination based upon gender and sexual orientation (FAC ¶¶ 132-139); (2) Title VII claim for sexual harassment (*id.* ¶¶ 140-147); (3) Title VII claim for hostile work environment (*id.* ¶¶ 148-153); (4) Title VII claim for retaliation (*id.* ¶¶ 154-162); (5) Section 1983 claim for discrimination based upon gender and sexual orientation (*id.* ¶¶ 163-169); (6) Section 1983 claim for sexual harassment (*id.* ¶¶ 170-176); (7) Section 1983 claim for retaliation (*id.* ¶¶ 177-180); (8) Section 1983 claim for hostile work environment (*id.* ¶¶ 181-184); (9) Section 1983 claim for unfair discipline (*id.* ¶¶ 185-188); (10) Section 1983 claim for violation of equal protection and due process (*id.* ¶¶ 189-195); (11) *Monell* claim (*id.* ¶¶ 196-207); (12) NYSHRL claim for discrimination (*id.* ¶¶ 208-218); (13) NYSHRL claim for aiding and abetting discrimination (*id.* ¶¶ 219-225); (14) NYSHRL claim for retaliation (*id.* ¶¶ 226-233).

For the reasons set forth below, Defendants' motions are GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The allegations in the FAC relevant to Defendants' motions are recited below.

I. <u>Relevant Events Occurring Before October 10, 2019</u>

Plaintiff has been employed by the Town of Greenburgh as a police officer in the Greenburgh Police Department ("GPD") since January 2017. (FAC ¶ 44). She began her field training with Officer Albano as her Field Training Officer, who told Plaintiff not to "sleep around" and not to report any instances of sexual harassment. (*Id.*). Albano was injured two weeks into Plaintiff's field training and Officer Kozakiewicz replaced her as Plaintiff's Field Training Officer thereafter. (*Id.* ¶ 47). Kozakiewicz discussed relationships and dating with Plaintiff, resulting in other GPD officers commenting on Kozakiewicz's "uninvited sexual attention and obsession" with Plaintiff. (*Id.* ¶ 48). Kozakiewicz texted Plaintiff after hours about topics unrelated to work, asked Plaintiff to go to dinner with him, told Plaintiff intimate details about his relationship with his wife, and sent a gift basket to Plaintiff's home. (*Id.* ¶¶ 49-50). Kozakiewicz learned that Plaintiff was bisexual and dating a woman on September 27, 2017 and upon learning this, became angry at Plaintiff and complained that she should have told him of her sexual orientation earlier. (*Id.* ¶ 52).

Plaintiff was assigned to the midnight shift following the completion of her field training in January 2018. (*Id.* ¶ 54). Sergeant Cerone, the *de facto* midnight shift supervisor, told other officers that he would make Plaintiff's life a "living hell" and would ignore Plaintiff during roll call and at crime scenes. (*Id.* ¶ 55). Cerone would regularly comment on Plaintiff's body, telling Plaintiff that she needed to gain weight and "bulk up." (*Id.* ¶ 56). Cerone also texted Plaintiff to

inquire about her personal relationships and sexual orientation, at one point asking Plaintiff if she was going to the beach with her girlfriend in a "bikini and heels." (*Id.* ¶ 57). Cerone continued to send Plaintiff inappropriate texts of a sexual nature even after Plaintiff told him that she did not wish to engage in such conversation. (*Id.*). Plaintiff conducted a pat down of a female in December 2018, which Cerone observed closely. Cerone later referred to the pat down, calling Plaintiff a "groper" and implying that Plaintiff touched the female inappropriately for her own sexual pleasure. (*Id.* ¶ 58).

Officers were directed to retrieve parking booklets from a box located on a desk behind Plaintiff during roll call before the commencement of the midnight shift on January 19, 2019. (*Id.* ¶ 60). Plaintiff turned around and bent over the desk to retrieve the booklets as directed. (*Id.*). Cerone ran towards her while she was doing this, grabbed her by the shoulders, and forcefully pushed his genital area towards her buttocks, toppling over Plaintiff and ramming himself into her. (*Id.*). Cerone then pulled Plaintiff away from the desk and threw her towards the middle of the room, causing Plaintiff to stumble and lose her balance. Nine other law enforcement officers were present during this assault, including their supervisor, Lieutenant Martin. (*Id.*). Lieutenant Martin immediately cleared the room of everyone except Cerone and Plaintiff. (*Id.* ¶ 61). Lieutenant Martin directed Plaintiff to prepare a written report about the assault and she was interviewed by Lieutenant Martin and Sergeant Fernandez. (*Id.* ¶¶ 62-63). The GPD conducted an internal investigation of the assault, which found that Cerone violated Section 301.01(14) of the GPD's Rules, Regulations and Manual of Procedures because of his "[f]ailure to treat any person civilly and respectfully." (*Id.* ¶ 65). Cerone was taken off the midnight shift and lost two weeks of vacation as a reprimand for this violation. (*Id.*).

Sergeant Vlasty voiced his dissatisfaction of Cerone being taken off the midnight shift, stating that Plaintiff should have been reprimanded as well. (*Id.* ¶¶ 67-68). Three of Plaintiff's supervisors, Gramaglia, Grady, and Rodriguez, stopped speaking to her when she returned to work and repeatedly placed her on "6 Post," widely known in the GPD to be the most dangerous and least desirable post, where a majority of violent crimes occurred, as a punishment for her written report of the January 19, 2019 assault. (*Id.* ¶ 69). Officers would not respond when Plaintiff called in for back up, or intentionally delayed their response time, throughout 2019 because of her report against Cerone. (*Id.* ¶ 70).

II. <u>Relevant Events Occurring After October 10, 2019</u>

Plaintiff applied to the Westchester County Police Department ("WCPD") in an attempt to transfer out of the GPD, and received a job offer on November 26, 2019. (*Id.* ¶ 76). She accepted the position, which was to commence on December 30, 2019. (*Id.*). Plaintiff told her supervisors, Chief Ryan and Lieutenant Powell, of her plans to transfer to WCPD on December 9, 2019. (*Id.* ¶ 77). Plaintiff referenced the discriminatory conduct and sexual harassment she was experiencing when asked why she was transferring and told her supervisors that she feared for her safety because officers were not responding to her calls for back-up. (*Id.*). WCPD rescinded her job offer on December 17, 2019. (*Id.* ¶ 78). GPD Chief McNerney allegedly placed a call to the WCPD Commissioner and advised him not to hire Plaintiff because she was a "sexual harassment liability." (*Id.* ¶ 79). Plaintiff met with Lieutenant Powell in January 2020 and was advised that the GPD would be conducting an internal investigation regarding other officers not responding to Plaintiff's calls for back-up and directed Plaintiff to write a statement naming every person who

failed to respond to a call for back-up. (*Id.* ¶¶ 80-81). Plaintiff wrote a statement pursuant to Lieutenant Powell's directive. (*Id.* ¶ 81).

Albano, from January to March 2020, repeatedly made comments to other officers about Plaintiff's sexual orientation, and made remarks that Plaintiff was untrustworthy in reference to the report against Cerone. (*Id* ¶¶ 82, 84). Male police officers displayed pornographic photographs to Plaintiff and describe their own sexual encounters to her throughout 2020. (*Id.* ¶ 83). Plaintiff filed her First EEOC charge on August 5, 2020 and, shortly thereafter, the GPD commenced an investigation regarding the allegations made therein. (*Id.* ¶ 86). Plaintiff was involved in a motor vehicle accident on October 5, 2020 and sustained significant injuries. (*Id.* ¶ 91). Plaintiff received a Letter of Supervisory Notice–an official reprimand notification–in connection with her October 5, 2020 accident, which referenced her speed and stated that further "procedural violations would not be tolerated" and could result in punitive discipline. (*Id.* ¶ 102). Plaintiff was transferred to the 6 Post from the 7 Post upon returning to work after her accident. (*Id.* ¶ 92).

On April 16, 2021, Plaintiff took a personal break during her shift so that she could use the bathroom. (*Id.* ¶ 107). Plaintiff was ordered back to headquarters that same day and told by Lieutenant Matthews that she was not allowed to use the bathroom when there was a call. (*Id.* ¶ 108). Plaintiff told Matthews that she needed to use the bathroom because she was on her period and Matthews responded by making a disgusted face and remarking that he didn't "need to hear that." (*Id.*). Plaintiff received a Letter of Supervisory Notice from Captain Farina on June 15, 2021 in connection to Plaintiff using the bathroom on April 16, 2021. (*Id.* ¶ 112).

Plaintiff filed two applications for workers' compensation in July 2021. (*Id.* ¶¶ 122-123). The first application related to Plaintiff's gastrointestinal issues, which were medically connected

to the stress Plaintiff experienced on the job. (*Id.*). The second application was based upon her emotional distress, anxiety, PTSD, and depression related to the January 19, 2019 assault by Cerone. (*Id.*). Both applications were denied because the Town had failed to timely notify the workers' compensation board of Plaintiff's work-related injuries and failed to timely provide the supporting medical documentation. (*Id.* ¶ 124). Plaintiff was confronted with the dilemma of returning to work or being forced to resign, as a result of these denials, which Plaintiff alleges constitutes "a constructive discharge." (*Id.* ¶ 125).

Plaintiff served the Town of Greenburgh with a Notice of Claim setting forth the nature of her claims for relief brought pursuant to the NYSHRL. (*Id.* ¶ 11). Plaintiff filed a Second EEOC charge on September 23, 2021, setting forth "additional actions contributing to and further evidencing the continuing violations and unlawful discrimination" which took place since Plaintiff filed her First EEOC charge on August 5, 2020. (*Id.* ¶ 9).

## **STANDARD OF REVIEW**

I. Federal Rule of Civil Procedure 12(b)(6) Standard

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted

unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## II.   Federal Rule of Civil Procedure 12(c) Standard

The Court may dismiss an action under Federal Rule of Civil Procedure 12(c) so long as the motion is made "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "When evaluating a motion for judgment on the pleadings under Rule 12(c), the Court applies the same 'standard used in evaluating a motion to dismiss under Rule 12(b)(6)." *Kelly v. City of Mount Vernon*, No. 19-CV-11369, 2021 WL 1947777, at *2 (S.D.N.Y. May 14, 2021).; *see also L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) (observing that the standard for determining the sufficiency of a pleading under Rule 12(c) is the same standard applicable to dismissals pursuant to Rule 12(b)(6).).

III.   Documents Considered on the Motion to Dismiss

In addition to the allegations in the FAC, the Court may and does also consider: (i) Plaintiff's August 5, 2020 EEOC Charge of Discrimination (Doc. 81-3, "First EEOC Charge"); (ii) Plaintiff's September 22, 2021 EEOC Charge of Discrimination (Doc. 81-4, "Second EEOC Charge"); and (iii) Plaintiff's September 21, 2021 Notice of Claim (Doc. 68-5).[3] *See Littlejohn v. City of New York*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) (considering plaintiff's EEOC charges and related documents on a motion to dismiss); *see also Reyes v. Westchester Cnty. Health Care Corp.*, No. 19-CV-08916, 2021 WL 310945, at *5 (S.D.N.Y. Jan. 29, 2021) ("courts routinely take judicial notice of filings and determinations made in EEOC investigations").

## ANALYSIS

Defendants press two arguments in support of their motions to dismiss: (i) Plaintiff's Title VII claims are time-barred due to her failure to timely file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practices; and (ii) Plaintiff's NYSHRL claims are barred by her failure to timely serve a notice of claim and comply with the other notice requirements pursuant to New York State Town Law § 67. The Court will address each of these arguments in turn.

I.   Timeliness of Title VII Claims

Plaintiff brings four claims for relief under Title VII: (i) discrimination, (ii) sexual harassment, (iii) hostile work environment, and (iv) retaliation. (FAC ¶¶ 132-162). Plaintiff must,

---

[3] Plaintiff also attaches as an exhibit to her opposition papers a Notice of Decision from the New York State Workers' Compensation Board. (Doc. 83-9). The Court need not and does not take judicial notice of this Notice of Decision as it is not relevant to the disposition of Defendants' motions.

for each of these four Title VII claims, meet a timeliness requirement with respect to filing an EEOC charge. "Title VII provides that, in these circumstances, a charge 'shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred.'" *Reyes v. Westchester Cnty. Health Care Corp.*, No. 21-00410, 2021 WL 4944285, at *4 (2d Cir. Oct. 25, 2021). "Claims outside this window are time-barred, except when the claims are part of a continuing violation; otherwise time-barred claims may proceed when separate acts 'collectively constitute one unlawful employment practice.'" *Staten v. City of New York*, 726 F. App'x 40, 43 (2d Cir. 2018) (quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004)). Defendants argue that any incidents occurring before October 10, 2019 (*i.e.*, 300 days before Plaintiff filed the First EEOC Charge) are time-barred and should not be considered. (Def. Br. at 5-11). Plaintiff argues that conduct pre-dating October 10, 2019 is actionable under the continuing violation doctrine. (Pl. Br. at 6-20).

"It has been the law of this Circuit that under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 155-56 (2d Cir. 2012) (cleaned up). The continuing violation doctrine "applies to claims composed of a series of separate acts that collectively constitute one unlawful practice, and functions to delay the commencement of the statute of limitations period until the last discriminatory act in furtherance of that broader unlawful practice." *Tassy v. Buttigieg*, 51 F.4th 521, 532 (2d Cir. 2022). However, the doctrine "does not apply to discrete acts of discrimination or retaliation that occur outside the statutory time period,

10

even if other related acts of discrimination occurred within the statutory time period." *Id.* Rather, the doctrine extends exclusively "to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020). Certain adverse events such as "discontinuation of a particular job assignment" or "individual sexual overtures" are considered "discrete acts not amenable to the continuing violation analysis. *Williams v. New York City Dep't of Educ.*, No. 19-CV-01353, 2021 WL 1178118, at *5 (S.D.N.Y. Mar. 29, 2021) (collecting cases).

Plaintiff alleges that the following conduct occurred before October 10, 2019, or more than 300 days before the filing of the First EEOC Charge: (1) subjected to unwanted advances and comments about her sexual orientation from Kozakiewicz (FAC ¶¶ 47-52) and Cerone (*id.* ¶¶ 55-58), (2) assaulted by Cerone (*id.* ¶ 60), (3) reassigned to "6 Post," known to be the most dangerous post, in retaliation for reporting the assault by Cerone (*id.* ¶ 70), and (4) alienated by other GPD officers who did not respond to or intentionally delayed their response to her calls for back-up (*id.* ¶ 70). Each of these four incidents are discrete acts that do not support application of the continuing violation doctrine. *See Williams*, 2021 WL 1178118, at *5 (holding "individual sexual overtures" and "discontinuation of a particular job assignments" are "discrete acts not amenable to the continuing violation analysis); *Roches-Bowman v. City of Mount Vernon*, No. 21-CV-5572, 2022 WL 3648394, at *4 (S.D.N.Y. Aug. 24, 2022) ("a sexual assault is a discrete act and discrete acts occur on the day they occur—even if they have effects lasting into the limitations period").

Plaintiff alleges that the following conduct occurred after October 10, 2019, or within 300 days of the filing of the First EEOC Charge: (1) her requests to transfer to another department were denied in retaliation for reporting the assault by Cerone (FAC ¶¶ 76-79), (2) Albano continued to

discuss Plaintiff's sexual orientation and made comments "casting doubt on Plaintiff's truthfulness" in relation to her reporting Cerone's assault (*id.* ¶ 82); (3) she was shown "pornographic photographs" by male officers who would also "describe their own sexual encounters" (*id.* ¶ 83), (4) she unfairly two received disciplinary reprimands, one from her car accident and another from her taking a bathroom break during a shift (*id.* ¶¶ 107-112), and (5) her workers' compensation applications—one for her gastrointestinal issues and another related to emotional distress caused by Cerone's assault—were denied in retaliation to her filing the First EEOC Complaint (*id.* ¶¶ 122-125).

The Court holds that the alleged incidents occurring before October 10, 2019 are discrete acts and as such, they "are not actionable independently and time-barred with respect to Plaintiff's [Title VII] claims for relief." *Reyes*, 2021 WL 310945, at *9. The Court now considers the nature and extent of Plaintiff's Title VII claims in light of its holding that those claims cannot be based on conduct that occurred prior to October 10, 2019.

A. <u>Plaintiff's First Claim for Relief (Title VII Discrimination) and Second Claim for Relief (Title VII Sexual Harassment)</u>

"To establish a *prima facie* case of discrimination under Title VII . . . a plaintiff must allege that (1) she is a member of a protected class; (2) she is qualified for the position held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Malloy v. Pompeo*, No. 18-CV-4756, 2020 WL 5603793, at *8 (S.D.N.Y. Sept. 18, 2020). The same elements apply to state a claim for Title VII sexual harassment because sexual harassment is "a form of gender discrimination." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 585 (S.D.N.Y. 2011).

Plaintiff has failed to state a claim for Title VII gender or sexual orientation based discrimination or sexual harassment because the only relevant conduct supporting these claims that is not time-barred is the allegation that certain unidentified male police officers "would display pornographic and obscene photos to her" and "describe their own sexual encounters." (FAC ¶ 83). Such "offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment" necessary to give rise to liability under Title VII. *Reyes*, 2021 WL 4944285, at *3 (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001)). Plaintiff further fails to plead that the allegedly discriminatory conduct that took place within the 300-day period prior to the filing of the First EEOC Charge led to any adverse employment action against her. Plaintiff does not attempt to allege any connection between the alleged discriminatory conduct occurring after October 10, 2019 and the disciplinary reprimands she received (FAC ¶¶ 107-112) or her eventual constructive discharge (*id.* ¶ 125). Plaintiff has "failed to establish causation between [the conduct that is not time-barred] and any adverse employment action." *Reyes*, 2021 WL 4944285, at *12.

Accordingly, Defendants' motion to dismiss Plaintiff's first claim for relief concerning Title VII discrimination and second claim for relief concerning sexual harassment claims are GRANTED.

    B.  <u>Plaintiff's Third Claim for Relief (Title VII Hostile Work Environment)</u>

A claim for hostile work environment, unlike a discrimination or retaliation claim, by its "very nature involves repeated conduct," and, as such, "cannot be said to occur on any particular day." *Richard v. New York City Dep't of Educ.*, No. 16-CV-00957, 2017 WL 1232498, at *14 (E.D.N.Y. Mar. 31, 2017) (quoting *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir.

2010)). So long as the "timely acts are sufficiently related to acts preceding the limitations period" the Court may "consider the entire scope of the claim, including behavior outside the limitations period." *Staten v. City of New York*, 653 F. App'x 78, 80 (2d Cir. 2016). Only two of the allegedly harassing acts took place within the 300-day period before Plaintiff filed her First EEOC Charge: (i) Albano's comments regarding Plaintiff's sexual orientation and "casting doubt on Plaintiff's truthfulness" in relation to her reporting Cerone's assault (FAC ¶ 82) and (ii) Plaintiff being shown "pornographic photographs" by unidentified male officers who would also "describe their own sexual encounters" to her (*id.* ¶ 83).

The latter conduct by the unidentified male officers is not sufficiently related to the time-barred conduct because the comments were made by different co-workers who, unlike Kozakiewicz and Cerone, were not alleged to be in supervisory roles relative to Plaintiff. *See Dziedzic v. State Univ. of New York at Oswego*, 648 F. App'x 125, 128 (2d Cir. 2016) (finding insufficient relatedness to apply the continuing violations doctrine where "the sexual joke was made by different co-workers in a different section of the paint department than the harassment allegedly predating [plaintiff's] medical leave"). The comments by Albano implying that Plaintiff's report of Cerone's assault was false are plainly related to the escalating harassment Plaintiff alleges. (FAC ¶ 82). Plaintiff has therefore sufficiently alleged "that one act contributing to the [hostile work environment] claim occurred within the statutory period" and therefore "the entire time period of the hostile work environment may be considered by [the] [C]ourt for the purposes of determining liability." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).

Accordingly, Defendants' motion to dismiss the third claim for relief concerning Title VII hostile work environment is DENIED.

### C.   Title VII Retaliation Claim

To state a claim for Title VII retaliation, Plaintiff must allege "1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013). "A plaintiff engages in protected activity when she (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Ramirez v. Michael Cetta Inc.*, No. 19-CV-00986, 2020 WL 5819551, at *19 (S.D.N.Y. Sept. 30, 2020) (cleaned up).

Plaintiff engaged in three protected activities: (i) her written report to her supervisors describing the assault by Cerone (FAC ¶¶ 62-63), (ii) her First EEOC Charge (*id.* ¶ 9), and (iii) her Second EEOC Charge (*id.*). Plaintiff alleges that Defendants retaliated against her by issuing baseless disciplinary reprimands (*id.* ¶¶ 107-112), preventing her from transferring to the Westchester County Police Department (*id.* ¶¶ 76-79), and denying her claims for worker's compensation (*id.* ¶¶ 122-125). Plaintiff alleges that the last of these three retaliatory actions constituted a constructive termination of her employment with the GPD. (*Id.* ¶ 125). As Defendants' sole argument for dismissal is predicated on the untimeliness of the allegedly retaliatory acts, the motion must be denied. Each of alleged retaliatory actions took place within 300 days of the filing of Plaintiff's First EEOC Charge.

Accordingly, Defendants' motion to dismiss the fourth claim for relief concerning Title VII retaliation is DENIED.

II.   NYSHRL Notice of Claim

Plaintiff presses three claims for relief under the NYSHRL: (i) the twelfth claim for relief covering discrimination, (ii) the thirteenth claim for relief covering aiding and abetting discrimination, and (iii) and the fourteenth claim for relief covering retaliation. (FAC ¶¶ 208-233). Defendants argue that Plaintiff's NYSHRL claims for discrimination, aiding and abetting, and retaliation must be dismissed because Plaintiff failed to timely serve a notice of claim. (Def. Br. at 11-21). State law claims pressed in federal court are still "subject to state procedural rules." *Russell v. Westchester Cmty. Coll.*, No. 16-CV-01712, 2017 WL 4326545, at *5 (S.D.N.Y. Sept. 27, 2017) (internal quotation marks omitted). New York Town Law provides, in pertinent part:

> Any claim including a claim specified in section sixty-five-a of this chapter which may be made against the town or town superintendent of highways for damages for wrong or injury to person or property or for the death of a person, shall be made and served in compliance with section fifty-e of the general municipal law.

N.Y. Town Law § 67(1). New York General Municipal Law § 50-e, in turn, requires that a notice of claim "be served in accordance with the provisions of th[at] section within [90] days after the claim arises." N.Y. Gen. Mun. Law § 50-e(1)(a). "It is well-established in the jurisprudence of this Circuit that the state law claims at issue here would be subject to the notice of claim requirement." *Daly v. Westchester Cnty. Bd. of Legislators*, No. 19-CV-04642, 2021 WL 229672, at *13 (S.D.N.Y. Jan. 22, 2021) (collecting cases). "This notice of claim requirement is 'construed strictly by New York state courts,' and a '[f]ailure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action.' " *Croci v. Town of Haverstraw*, 175 F. Supp. 3d

16

373, 388 (S.D.N.Y. 2016) (quoting *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999)). It is Plaintiff's burden to affirmatively plead that she "complied with notice of claim requirements." *Dinkins v. New York*, No. 19-CV-08447, 2020 WL 5659554, at *10 (S.D.N.Y. Sept. 23, 2020) (citing *Villa v. Westchester Cty.*, No. 19-CV-00428, 2020 WL 4505968, at *8 (S.D.N.Y. Aug. 5, 2020)).

Plaintiff alleges that she served the Town of Greenburgh on September 22, 2021 with a Notice of Claim setting forth the nature of her NYSHRL claims. (FAC ¶ 11). Plaintiff acknowledges that "in order for the Notice of Claim to have been timely served, at least one act upon which the NYSHRL claim are based must have occurred within 90 days of that service or June 24, 2021." (Pl. Br. at 21). Here, none of the alleged harassing conduct took place within 90 days of the service of the Notice of Claim. The only conduct that took place within 90 days of the service of the Notice of Claim is Defendants' alleged retaliatory refusal to provide documentation related to Plaintiff's workers' compensation disability claims. (FAC ¶¶ 121-124). This conduct is relevant only to Plaintiff's NYSHRL retaliation claim, and not the NYSHRL discrimination or aiding and abetting claims. Construing the notice of claim requirement "strictly," as the Court must, the Court holds that Plaintiff did not timely serve a notice of claim as to the NYSHRL discrimination or aiding and abetting claims but did timely submit a notice of claim as to the NYSHRL retaliation claim. *Croci*, 175 F. Supp. 3d at 388.[4]

---

[4] Plaintiff argues, in the alternative, that even if the Court were to dismiss her NYSHRL claims as to the Town, that she can still maintain those claims against the Defendants in their individual capacities. Not so. To state a claim under the NYSHRL a plaintiff must first allege liability as to the employer before accessorial liability can be found. *See Davis v. Power of Auth.*, No. 19-CV-00792, 2022 WL 309200, at *20 (S.D.N.Y. Feb. 2, 2022). Plaintiff cannot state a claim

Accordingly, Defendants' motion to dismiss Plaintiff's twelfth and thirteenth claims for relief covering NYSHRL discrimination and aiding and abetting is GRANTED; and the motion to dismiss Plaintiff's fourteenth claim for relief covering NYSHRL retaliation is DENIED.

## CONCLUSION

In light of the foregoing, Defendants' motions are GRANTED IN PART and DENIED IN PART.

The Individual Officer Defendants' and Defendant Gramaglia's motions for judgment on the pleadings, and the Town Defendants' motion to dismiss, are GRANTED with respect to (i) the Title VII discrimination claim (Count 1, FAC ¶¶ 132-139), (ii) the Title VII sexual harassment claim (Count 2, *id.* ¶¶ 140-147), (iii) the NYSHRL discrimination claim (Count 12, *id.* ¶¶ 208-218), and (iv) the NYSHRL aiding and abetting claim (Count 13, *id.* ¶¶ 219-225).

The motions are DENIED with respect to (i) the Title VII hostile work environment claim (Count 3, *id.* ¶¶ 148-153), (ii) the Title VII retaliation claim (Count 4, *id.* ¶¶ 154-162), and (iii) the NYSHRL retaliation claim (Count 14, *id.* ¶¶ 226-233).

The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Doc. 76, Doc. 78, and Doc. 80.

**SO ORDERED:**

Dated:   White Plains, New York
          March 8, 2023

_____
PHILIP M. HALPERN
United States District Judge

---

for NYSHRL discrimination or aiding and abetting as a matter of law. *See supra*. Accordingly, Plaintiff's NYSHRL discrimination and aiding and abetting claims against the Defendants in their individual capacities must also be dismissed.

18