UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KRISTIN STEIN,

                Plaintiff,

      -against-

TOWN OF GREENBURGH, et al.,

                Defendants.

**<u>OPINION AND ORDER</u>**

21-CV-05673 (PMH)

PHILIP M. HALPERN, United States District Judge:

Kristin Stein ("Plaintiff") brought this action against the Town of Greenburgh ("Town"), Interim Chief of Police Brian Ryan ("Ryan"), Chief of Police Chris McNerney ("McNerney"), Lieutenant Robert J. Gramaglia ("Gramaglia"), Lieutenant Kobie Powell ("Powell"), Lieutenant Brian Matthews ("Matthews"), Captain Frank Farina ("Farina"), Sergeant Dennis Basulto ("Basulto"), Sergeant Eric Vlasty ("Vlasty"), Sergeant Patrick T. Grady ("Grady"), Sergeant Michael Cookingham ("Cookingham"), Sergeant Alex Rodriguez ("Rodriguez"), Police Officer Jeff Cerone ("Cerone"), Police Officer John Pilla ("Pilla"), Police Officer Brian Doherty ("Doherty"), Police Officer Dyana Albano ("Albano"), and Police Officer Frank Kozakiewicz ("Kozakiewicz" and collectively, "Defendants"). (Doc. 3). Plaintiff filed a First Amended and Supplemental Complaint on March 3, 2022 (Doc. 69, "FAC"), asserting fourteen claims for relief for discrimination, sexual harassment, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*; and 42 U.S.C. § 1983.

On March 8, 2023, the Court granted Defendants' motions to dismiss as to four of Plaintiff's fourteen claims for relief—namely, the First Claim (Title VII discrimination), Second Claim (Title VII sexual harassment), Twelfth Claim (NYSHRL discrimination), and Thirteenth

Claim (NYSHRL aiding and abetting). (Doc. 107, "Prior Order").[1] Defendants filed Answers to the Amended Complaint (Docs. 74, 75, 108), and the parties engaged in discovery, which was extended multiple times, pursuant to a Civil Case Discovery Plan and Scheduling Order. (Docs. 55, 71, 96, 106, 111, 118, 121).

On May 1, 2024, the Court so-ordered a Stipulation of Partial Voluntary Dismissal Pursuant to Federal Rule of Civil Procedure 41(a)(1), which dismissed the action as asserted against Defendants Ryan, Gramaglia, Basulto, Vlasaty, Grady, Cookingham, Rodriguez, Pilla, Doherty, and McNerney, and  withdrew "any allegations that [McNerney] interfered with [Plaintiff's] job application to the Westchester County Police Department." (Doc. 131). On December 18, 2024, the Court so-ordered a second Stipulation of Partial Voluntary Dismissal Pursuant to Federal Rule of Civil Procedure 41(a)(1), which dismissed the action as asserted against Albano and Kozakiewicz. (Doc. 143).

On June 6, 2024, the Court granted remaining Defendants leave to move for summary judgment.[2] (Doc. 136). On August 29, 2024, in accordance with the briefing schedule set by the Court, Defendants served their joint motion for summary judgment. (Doc. 146; Doc. 147; Doc. 148, "Scheibel Decl."; Doc. 149, "Def. Br.").[3] Plaintiff served her opposition to Defendants' motion for summary judgment on January 20, 2025. (Doc. 150; Doc. 151, "Cossu Decl."; Doc. 152, "Pl. Br."). On February 18, 2025, Defendants filed their joint reply. (Doc. 153, "Scheibel Aff."; Doc. 154, "Reply"), and all motion papers were filed on February 18, 2025.

---

[1] This decision is available on commercial databases. *See Stein v. Town of Greenburgh*, No. 21-CV-05673, 2023 WL 2432574, at *1 (S.D.N.Y. Mar. 8, 2023).

[2] The remaining Defendants are the Town, Powell, Matthews, Farina, and Cerone.

[3] Citations to the documents referenced herein correspond to the pagination generated by ECF.

For the reasons set forth below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## **BACKGROUND**

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, Defendants' Rule 56.1 Statement with Plaintiff's responses thereto (Doc. 150, "56.1"), and the admissible evidence proffered by the parties.[4] Unless otherwise indicated, the following facts are undisputed.

In 2017, Plaintiff was hired by the Greenburgh Police Department ("GPD"), completed the Police Academy, and underwent field training. (*Id*. ¶¶ 21, 23, 25). Plaintiff was transferred to the midnight shift in January 2018. (*Id*. ¶ 45). On January 19, 2019, at roll call at the start of the midnight shift, an incident occurred whereby another officer—Cerone—made physical contact with Plaintiff (the "Cerone Incident"). (*Id*. ¶ 57). Plaintiff complained to her supervisors that she was "pushed into the desk" and "thrown across the room" by Cerone and that the conduct was inappropriate. (*Id*. ¶¶ 61-63). Plaintiff later described the assault as sexual in nature, testifying that she felt Officer Cerone "grab [her] shoulders and push [his] groin and stomach area into [her] rear

---

[4] The Local Rules of the United States District Courts for the Southern and Eastern Districts of New York instruct that a "paragraph in the [movant's] statement of material facts . . . will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civil Rule 56.1(c). Furthermore, "[e]ach statement by the . . . opponent . . . including each statement denying and controverting any statement of material fact, must be followed by citation to evidence which would be admissible . . . ." *Id*. at 56.1(d). Defendants identify ten paragraphs in the Rule 56.1 Statement where Plaintiff's response fails to specifically cite evidence that conflicts with Defendants' factual assertion or cites evidence that actually supports the factual statement. (Reply at 7-8). Thus, the Court deems Defendants' statements of fact admitted unless specifically controverted by Plaintiff and supported by evidence. *Brooke v. Cnty. of Rockland*, No. 17-CV-03166, 2021 WL 809320, at *2 (S.D.N.Y. Mar. 3, 2021), *aff'd*, No. 21-598-CV, 2022 WL 6585350 (2d Cir. Oct. 11, 2022). Moreover, Plaintiff's assertion of "General Objection[s]" to Defendants' statements of material fact are improper and do not create a genuine issue of material fact. As a result, those facts are deemed admitted for summary judgment purposes. *See Frederick v. Cap. One Bank (USA), N.A.*, No. 14-CV-05460, 2018 WL 1583289, at *2 (S.D.N.Y. Mar. 27, 2018) ("Plaintiff's incorporation of his 'general objections' in response to each and every statement in [Defendants'] 56.1 statement, does not create a genuine dispute. . . .").

end," and that he then grabbed her by her shoulders and "threw [her] back into the middle of the room." (*Id*. ¶¶ 66, 74-75; Scheibel Decl., Ex. E "2.8.23 Pl. Tr." at 232:22-234:5). Powell and Farina investigated the incident and concluded that Cerone had intentionally pushed Stein and falsely stated it was an accident. (56.1 ¶¶ 68-73, 79-81; Scheibel Decl., Ex. AA at TOG-000567). Cerone was disciplined and permanently removed from the midnight shift. (56.1 ¶¶ 83-84).

On December 9, 2019, Plaintiff complained that co-workers on the midnight shift were reluctant to back her on car stops. (*Id*. ¶ 92; 2.8.23 Pl. Tr. at 316:7-10). Plaintiff believed she was being retaliated against for having complained about the Cerone Incident. (56.1 ¶ 94; Scheibel Decl., Ex. EE at TOG-000611; 2.8.23 Pl. Tr. at 306:9-16). Powell investigated Plaintiff's complaint, found two instances of delayed back-up by her fellow officers, and determined that Fernandez, Plaintiff's immediate supervisor, appropriately addressed the issue at the time. (56.1 ¶¶ 86, 93-99; Scheibel Decl., Ex. EE at TOG-000611-612). Powell concluded that "there is little to support [Plaintiff's] allegation that her fellow officers are intentionally not backing her, or failing to back her expeditiously" and closed the investigation. (*Id*.).

In January 2020, Plaintiff was assigned to the day shift. (56.1 ¶ 115; 2.8.23 Pl. Tr. at 308:13-14). On August 5, 2020, Plaintiff submitted a complaint to the EEOC regarding alleged inappropriate behavior by Kozakiewicz in 2017 and the Cerone Incident. (56.1 ¶ 119). The Town received notice of the EEOC Complaint on September 12, 2020, and Powell opened an investigation into Plaintiff's claims. (*Id*. ¶¶ 120, 122; Scheibel Decl., Ex. FFF).

On October 5, 2020, Plaintiff was involved in a motor vehicle accident while out on patrol when she collided with a vehicle making an illegal left-hand turn. (56.1 ¶¶ 129, 131). It is undisputed that Plaintiff was traveling above the speed limit at the time of the accident. (*Id*. ¶¶ 131, 138; Scheibel Decl., Ex. D at 30:7-15, 39:2-13). The parties dispute, however, whether

Plaintiff's speed was appropriate as a defensive maneuver to avoid the accident. (56.1 ¶ 138). The GDP investigated the accident (the "MVA Investigation") and ultimately issued Plaintiff a Letter of Supervisory Notice directing her to review certain procedures. (*Id*. ¶¶ 134-135, 137; Scheibel Decl., Ex. ZZ at TOG-000101). Plaintiff submitted a response letter claiming that the Letter of Supervisory Notice was "evidence of continuing retaliation" for her EEOC Complaint. (56.1 ¶ 139; Scheibel Decl., Ex. II at TOG-000820-821).

On April 16, 2021, Plaintiff placed herself on a "personal break" via the computer in her patrol car and left her post without permission to use the restroom. (56.1 ¶ 149; Scheibel Decl., Ex. F "2.9.23 Pl. Tr." at 135:13-18, 136:7-9). Between the time that she put herself on a "personal break" and left her post, GPD received a call regarding an active fight in progress and multiple units were dispatched to respond. (56.1 ¶ 148; Scheibel Decl., Ex. LL at TOG-00879; 2.9.23 Pl. Tr. at 142:6-23). Upon Plaintiff's arrival at headquarters, she was instructed by Matthews to respond to the fight. (56.1 ¶¶ 150-151). Plaintiff explained her need to use the restroom, and Matthews allowed Plaintiff to do so. (*Id*. ¶ 152; Scheibel Decl., Ex. LL at TOG-000879). Matthews completed a supervisor's report about the interaction, noting Plaintiff's failure to respond to the call and "overall tone [that] was argumentative and disrespectful." (56.1 ¶ 153; Scheibel Decl., Ex. LL at TOG-000883-884). Plaintiff disputed that she violated procedure and was disrespectful to Matthews. (Pl. Br. at 31). Powell investigated the matter (the "April 16, 2021 Investigation") and, on June 15, 2021, Farina issued Plaintiff a Letter of Supervisory Notice reminding her of certain responsibilities and directing her to review procedure. (56.1 ¶¶ 154, 156-161; Scheibel Decl., Ex. LL at TOG-000926-927; *id*., Ex. ZZ at TOG-000106-107). Plaintiff submitted a letter in response asserting that the investigation and letter of supervisory notice was retaliatory. (56.1 ¶ 162).

In April 2021, the GPD had not had a Commendation Award Ceremony for two years and police officers were advised that they could write up their own requests for commendation and hand them in. (Cossu Decl., Ex. 3 "Pl. Decl." ¶ 20). Plaintiff wrote two commendation requests regarding a July 13, 2019 animal cruelty incident and a July 2020 incident involving a deaf bicyclist. (56.1 ¶¶ 164-165). Plaintiff's commendation requests were investigated for inaccuracies (the "April 27, 2021 Investigation"), and Plaintiff was ultimately deemed to have exaggerated her role in the incidents. (*Id.* ¶¶ 167, 170, 172; Ex. OO at 972-974). On June 15, 2021, Farina issued Plaintiff a Letter of Supervisory Notice reminding her of her responsibilities to ensure that reports are accurate and complete. (56.1 ¶ 173; Scheibel Decl., Ex. ZZ at TOG-000104-105). Plaintiff disputed that the commendation requests constitute a "[r]eport" under GDP rules, denied having exaggerated the facts, and complained that the investigation and letter were retaliatory. (56.1 ¶¶ 170-173; Scheibel Decl., Ex. ZZ at TOG-000108-110).

On April 21, 2021, Plaintiff notified the Town by email that she was being retaliated against. (56.1 ¶ 175). On April 27, 2021, Plaintiff submitted a complaint to the Town alleging that she had been subjected to retaliation between September 2020 and April 2021 due to her EEOC Complaint. (*Id.* ¶ 176). The Town investigated Plaintiff's complaint and, on August 30, 2021, issued a report concluding that the alleged conduct "does not constitute discrimination, harassment or retaliation." (*Id.* ¶¶ 177-178; Scheibel Decl., Ex. BBB at TOG-0003642-3650).

Plaintiff states that she requested assignment to restricted duty on July 2, 2021 and that her request was denied. (Pl. Decl. ¶¶ 29-33). Plaintiff's last date of paid leave was October 9, 2021. (*Id.* ¶ 37). Defendants dispute that Plaintiff was ever denied a request for restricted duty. (Reply at 18).

This litigation followed.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[5] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023); *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney*, 49 F.4th at 738 (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. *Porter v. Dartmouth-Hitchcock Medical Center*, No. 92 F.4th 129, 147 (2d Cir. 2024) ("[T]he court may not make credibility determinations or weigh the evidence." (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010))). The task is material issue spotting, not material issue

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Further, "while the court is required to review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Porter*, 92 F.4th at 147 (quoting *Kaytor*, 609 F.3d at 545). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New*

*York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

"Courts have acknowledged the dangers of summary judgment in discrimination cases: 'Because direct evidence of . . . discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Benson v. Fam. Dollar Stores, Inc.*, No. 12-CV-01457, 2017 WL 11576213, at *3 (N.D.N.Y. Mar. 31, 2017) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations and internal quotation marks omitted)), *aff'd sub nom. Benson v. Fam. Dollar Operations, Inc.*, 755 F. App'x 52 (2d Cir. 2018).

## ANALYSIS

### I.     Third and Eighth Claims for Relief: Hostile Work Environment

Plaintiff's Third and Eighth Claims for Relief allege hostile work environment in violation of Title VII and Section 1983, on the basis that Plaintiff endured a "severe and pervasive sexually hostile environment," including "sexual solicitations, jokes, comments, remarks and innuendo, both verbal and non-verbal," and that this hostile environment was "maintained through actual and perceived threats of retaliation." (FAC ¶¶ 38-40, 148-153, 181-184).

The standard for showing a hostile work environment under Title VII and Section 1983 is "essentially the same." *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011) (citing *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 609 (2d Cir. 2006)). To establish a hostile work environment, "a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015). The Second Circuit has instructed courts, on summary judgment, to "examine the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance." *Rivera v. Rochester Genesee Regional Transp. Authority*, 743 F.3d 11, 20 (2d Cir. 2014). Although "[i]solated incidents usually will not suffice to establish a hostile work environment, . . . [the Second Circuit has] often noted that even a single episode of harassment can establish a hostile work environment if the incident is sufficiently severe." *Zeng v. New York City Hous. Auth.*, No. 22-138-CV, 2023 WL 4553416, at *2 (2d Cir. July 17, 2023).

Plaintiff specifically identifies the Cerone Incident as an example of sexual harassment and otherwise argues that Defendants' retaliatory treatment, discussed *infra*, "contribut[ed] to her hostile work environment." (Pl. Br. at 39-40). Defendants seek dismissal of Plaintiff's hostile work environment claims to the extent they are premised on the following alleged conduct: (i) Kozakiewicz's conduct towards Plaintiff while he was her field training officer in 2017 (FAC ¶¶ 48-53)[6]; (ii) the Cerone Incident; (iii) Cerone's text messages to Plaintiff; and (iv) male officers showing Plaintiff obscene photos (*id*. ¶ 83). (Def. Br. at 16). Defendants also dispute that Plaintiff was subject to retaliatory treatment. (*Id*. at 29-39).

A. Conduct by Cerone

i. Title VII

---

[6] Plaintiff withdrew her claims against Kozakiewicz with prejudice. (Pl. Br. at 40; Doc. 143).

Defendants first argue that Plaintiff's hostile work environment claim based on Cerone's conduct is time-barred under Title VII. (*Id*. at 16-21). "Title VII provides that, in these circumstances, a charge 'shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred.'" *Reyes v. Westchester Cnty. Health Care Corp.*, No. 21-00410, 2021 WL 4944285, at *4 (2d Cir. Oct. 25, 2021). "Claims outside this window are time-barred, except when the claims are part of a continuing violation; otherwise time-barred claims may proceed when separate acts 'collectively constitute one unlawful employment practice.'" *Staten v. City of New York*, 726 F. App'x 40, 43 (2d Cir. 2018) (quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004)).

There is no dispute that the Cerone Incident occurred more than three hundred days prior to the filing of the EEOC Complaint and therefore falls outside of the statutory window. (Pl. Br. at 40-41; 56.1 ¶ 84). Plaintiff argues that Defendants' refusal to place her on restricted duty on July 2, 2021 is a timely instance of harassment that warrants consideration of the Cerone Incident under the continuing violation doctrine. (Pl. Br. at 40-41). However, as discussed *infra*, Plaintiff has failed to meet her burden to set forth sufficient evidence that Defendants denied her request for restricted duty. Accordingly, the Court cannot consider the time-barred Cerone Incident, nor his text messages that preceded the incident (56.1 ¶¶ 54-55, 64), under the continuing violation doctrine.

### ii.  Section 1983

With respect to Plaintiff's hostile work environment claim brought under Section 1983, the statute of limitations is three years. *See Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Therefore, the Cerone Incident is timely and may be considered. Defendants nevertheless argue that Plaintiff's claim fails due to a lack of action under color of state law. (Def. Br. at 21-

22). "For claims under Section 1983, a plaintiff must prove that '(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.'" *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 317 (E.D.N.Y. 2014) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)). "To act under color of state law, an individual 'ordinarily' must 'be a supervisor or have some position of authority or control over the plaintiff.'" *LaFontant v. Neale*, No. 18-CV-00023, 2019 WL 1953942, at *9 (S.D.N.Y. May 2, 2019). "[M]ere employment by the state does not mean that the employee's every act can properly be characterized as state action." *Id.* at *8 (citing *Patterson v. County of Oneida*, 375 F.3d 206, 231 (2d Cir. 2004)). "The dispositive test appears to be whether the defendants acted pursuant to power they possessed by state authority." *Id.* at *8 (citing *Defalco v. MTA Bus Co.*, 333 F. Supp. 3d 191, 198-99 (E.D.N.Y. 2018)).

Here, there is no dispute that Cerone and Plaintiff held the same rank as police officers. (56.1 ¶ 8). "Where the individual defendant is merely a co-worker of the plaintiff, such claims are routinely dismissed." *LaFontant*, 2019 WL 1953942, at *9. Plaintiff argues that Cerone was a *de facto* supervisor primarily because he was a more senior officer. (Pl. Br. at 41; 56.1 ¶¶ 8, 52; 2.8.23 Pl. Tr. at 178:9-12, 191:11-22). But Plaintiff's testimony that Cerone was senior to her is not sufficient to create a triable issue of fact that Cerone, during the January 19, 2021 incident and in sending her text messages before the incident, acted "*pursuant to* power he possessed by state authority." *LaFontant*, 2019 WL 1953942, at *9; *see also Kohutka*, 994 F. Supp. 2d at 317. Accordingly, Plaintiff has failed to establish that Cerone was acting under color of state law when he made physical contact with her on January 19, 2021 or sent her text messages prior to that

incident. Cerone's conduct, therefore, cannot sustain Plaintiff's claims for hostile work environment under Section 1983 or Title VII.

### B. Obscene Photographs

Plaintiff's hostile work environment claim is also based on her allegation that male police officers displayed pornographic and obscene photographs to her throughout her employment until 2020. (FAC ¶ 83). Specifically, Plaintiff testified that at least two officers showed her photographs of naked women on multiple occasions. (2.8.23 Pl. Tr. at 109:6-113:6; Scheibel Decl., Ex. D at 9:21-16:19). Defendants argue that Plaintiff's claim based on the showing of obscene photographs is barred by the *Faragher/Ellerth* Doctrine. (Def. Br. at 29).[7]

"The [*Faragher*/*Ellerth*] defense comprises two elements: that (1) the employer exercised reasonable care to prevent and correct promptly any discriminatory harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ferrara v. Sterling, Inc.*, No. 23-0454-CV, 2024 WL 485742, at *1 (2d Cir. Feb. 8, 2024) (quoting *Ferraro v. Kellwood Co.*, 440 F.3d 96, 101 (2d Cir. 2006)). With respect to the first element, there is no dispute that the Town and the GPD had polices in place prohibiting sexual harassment, discrimination, and retaliation, and several GPD officers testified to having received training on harassment. (56.1 ¶¶ 15-18, 20). Such anti-harassment policies support a finding that the employer exercised reasonable care. *See Ferrara*, 2024 WL 485742, at *2. With respect to the second element, Plaintiff testified that she did not report the fact that she was being shown these obscene photographs prior to filing her EEOC Complaint. (2.8.23 Pl. Tr. at 111:17-19, 112:13-15; Scheibel Decl., Ex. D at 13:18-23).

---

[7] Plaintiff does not specifically oppose application of the *Faragher/Ellerth* Doctrine to this alleged conduct of showing obscene photographs. Rather, Plaintiff argues in her opposition brief that this conduct supports her claim for municipal liability. (Pl. Br. at 45).

Accordingly, because Plaintiff did not report this alleged harassing conduct, there is no evidence from which a reasonable jury could find that Defendants failed to meet their burden on the second element of the affirmative defense. *See Ferrara*, 2024 WL 485742, at *2. Plaintiff's hostile work environment claims therefore fail to the extent they are premised on the showing of obscene photographs.

### C.  Retaliatory Conduct

Finally, Plaintiff briefly argues that Defendants' retaliatory conduct contributed to her hostile work environment. (Pl. Br. at 40 (citing *Voss v. McDonough*, No. 17-CV-09015, 2021 WL 4199941, at *16 (S.D.N.Y. Sept. 15, 2021)).[8] But the alleged retaliatory conduct, discussed in detail *infra*, is primarily based on Plaintiff being unfairly disciplined. This conduct is not evidence that Plaintiff was subject to a "severe and pervasive sexually hostile environment." (FAC ¶ 38).

Accordingly, Plaintiff has failed to meet her burden to show that she was subject to timely instances of harassment that were sufficiently "severe and pervasive" to maintain a hostile work environment claim. Defendants' motion for summary judgment is granted as to the Third and Eighth Claims for Relief.

### II.  Fourth, Seventh, and Fourteenth Claims for Relief: Retaliation

Plaintiff's Fourth, Seventh, and Fourteenth Claims for Relief allege retaliation in violation of Title VII, Section 1983, and the NYSHRL. (FAC ¶¶ 154-162, 177-180, 226-233). The Court considers Plaintiff's retaliation claims together, as these claims are governed by the same burden of proof. *See Goonewardena v. N.Y. Workers Comp. Bd.*, 258 F. Supp. 3d 326, 343-44 (S.D.N.Y.

---

[8] In *Voss v. McDonough*, the Court recognized that creation of a hostile work environment, in response to a protected activity, may constitute an adverse action to sustain a retaliation claim for relief. 2021 WL 4199941, at *16. That case is not applicable where, as here, Plaintiff argues that the alleged retaliatory conduct supports her hostile work environment claim for relief.

2017) (treating retaliation claims under Title VII, § 1983, and the NYSHRL under the same standard), *aff'd*, 788 F. App'x 779 (2d Cir. 2019). The burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), governs retaliation claims under all three statutes. *See Guzman v. City of New York*, 93 F. Supp. 3d 248, 261 (S.D.N.Y. 2015). "Under this framework, if a plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-retaliatory reason for its action." *Servello v. New York State Off. of Child. & Fam. Servs.*, No. 21-2541, 2022 WL 17411287, at *1 (2d Cir. Dec. 5, 2022). "The plaintiff then must show that the offered justification is pretext for retaliation." *Id.*

Defendants seek dismissal of Plaintiff's retaliation claims based on the following alleged retaliatory conduct: (i) Defendants' treatment of Plaintiff on the midnight shift, including co-workers ignoring her and delaying in providing back-up; (ii) Plaintiff being assigned more frequently to "6 Post";[9] (iii) the MVA Investigations and resulting Letters of Supervisory Notice; (iv) the April 16, 2021 Investigation regarding Plaintiff leaving her post and resulting Letter of Supervisory Notice; (v) the April 27, 2021 Investigation regarding Plaintiff's commendation request and resulting Letter of Supervisory Notice; (vi) Plaintiff's brother not being selected for the SWAT Team; (vii) the Town's failure to timely file paperwork regarding Plaintiff's July 2021 workers comp claim; and (viii) Defendants' refusal to place Plaintiff on restricted duty thereby forcing her to take unpaid leave. (Def. Br. at 30; Reply at 18-19).[10]

---

[9] Plaintiff's opposition brief does not address the allegation that she was assigned more frequently to "6 Post," a less favorable post, in retaliation for her complaint against Cerone. (FAC ¶ 69). Plaintiff has thus abandoned her retaliation claim based on that conduct. *See In re UBS AG Secs. Litig.*, No. 07-CV-11225, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (recognizing that a party "concedes through silence" arguments by its opponent that it fails to address).

[10] Plaintiff withdrew her allegations against McNerney with respect to his alleged interference with her transfer to the Westchester County Police Department, and therefore withdrew any claim for retaliation based on that conduct. (Pl. Br. at 12; Doc. 131).

Plaintiff's NYSHRL retaliation claim (Fourteenth Claim for Relief) is premised only the last theory of retaliatory conduct—Defendants' refusal to place Plaintiff on restricted duty. (Pl. Br. at 23 n.6).

A. Phase One: *Prima Facie* Case of Retaliation

To make out a *prima facie* case of retaliation, "a plaintiff must demonstrate that (1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Carr v. New York City Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023); *see also Ninying v. New York City Fire Dep't*, 807 F. App'x 112, 115 (2d Cir. 2020). The burden at the summary judgment stage for Plaintiff is "'minimal' and 'de minimis,'" and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). "[A] plaintiff alleging retaliation in violation of Title VII must show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." *Id.* at 845. "However, 'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 846.

i.    *First and Second Elements: Protected Activity and Awareness*

The first requirement of the *prima facie* case is not disputed: Defendants concede that Plaintiff was engaged in protective conduct, including her statements regarding the Cerone Incident and her filing the EEOC Complaint on August 5, 2020. (Def. Br. at 30). Plaintiff identifies several other protected activities that occurred between April 21, 2021 and March 3, 2022,

premised on her complaints of retaliation, discrimination, and hostile work environment. (Pl. Br. at 9-10). The second requirement is also met, as Defendants were aware of Plaintiff's statements about the Cerone Incident on the day that it occurred (56.1 ¶ 61), and received notice, by September 12, 2020, of Plaintiff's EEOC Complaint (*Id*. ¶ 120).

> ii.    *Third Element: Adverse Actions*

Defendants argue that Plaintiff failed to produce evidence in support of three of her eight categories of alleged retaliatory conduct—(i) Defendants' treatment of Plaintiff on the midnight shift; (ii) the Town's failure to timely file paperwork regarding Plaintiff's July 2021 workers comp claim; and (iii) Defendants' denial of her request for restricted duty. (Def. Br. at 31-34).

First, Defendants argue that the record does not support Plaintiff's claim that supervisors and other officers ignored and/or ostracized her and delayed providing back-up to her on the midnight shift. (*Id.* at 32; Reply at 17). Plaintiff testified that at least two supervisors on the midnight shift "completely ignore[d]" her. (2.8.23 Pl. Tr. at 285:21-287:8; 56.1 ¶ 113). Additionally, Plaintiff testified that certain co-workers on the midnight shift were reluctant to provide her back-up on her car stops. (2.8.23 Pl. Tr. at 306:9-16, 306:23-25; 56.1 ¶¶ 92, 94). Powell investigated Plaintiff's allegations of delayed back-up and found that Fernandez had investigated Plaintiff's complaints at the time they occurred, had determined that the delayed back-up was not intentional, and had admonished the officers involved. (*Id.* ¶¶ 93, 95, 97; Scheibel Decl., Ex. EE at TOG-000611-612, TOG-000616-617). Powell concluded that there was "little to support" Plaintiff's allegation that other officers "[were] intentionally not backing her, or failing to back her expeditiously." (Scheibel Decl., Ex. EE at TOG-000612). Regardless of Powell's conclusion, however, the documentary evidence confirms that instances of delayed back-up occurred. (*Id.*). That evidence, taken together with Plaintiff's testimony, is sufficient to create an issue of fact as

to whether, after the Cerone Incident, Plaintiff was subjected to retaliatory treatment by her co-workers on the midnight shift.

Second, Defendants argue that the alleged denial of restricted duty is unsupported by the record. (Reply at 18-19).[11] Plaintiff asserts in her declaration that she provided Defendants a doctor's note prescribing that "[she] be placed on restricted duty because [she] was continuing to suffer from gastrointestinal conditions . . . which required that [she] have a bathroom readily available." (Pl. Decl. ¶ 29). The doctor's note, however, states only that Plaintiff "has a medical problem requiring that she be placed on restrictive duty until further notice. If possible, she should have a consistent, regular schedule." (Cossu Decl., Ex. 60). Plaintiff further states that she explained her medical condition to supervisors and, after several hours, received a letter "effectively denying [her] restricted duty request." (Pl. Decl. ¶¶ 30-33). But the letter Plaintiff received did not deny her request for restricted duty; rather it stated that Plaintiff's doctor's note "does not explain what he means by restricted duty or by his reference to a consistent regular schedule," and asks Plaintiff to have her doctor clarify what restrictions on her duty are medically necessary and how long he anticipates such restricted duty is required. (Cossu Decl., Ex. 61). There is no evidence in the record that Plaintiff ever provided the requested clarification regarding her request for restricted duty. Accordingly, Plaintiff has failed to provide sufficient evidence from which a jury could find that Defendants denied her request for restricted duty thereby forcing her to take unpaid leave.

Finally, Defendants argue that there is no evidentiary support for Plaintiff's claim that the Town delayed in submitting her workers compensation paperwork. (Def. Br. at 32; FAC ¶ 124).

---

[11] Defendants also argue that this conduct should be "dismissed as unpled." (Reply at 18). But this theory is not new; Plaintiff pled that she requested to be placed on restricted duty, that her request was ignored, and that she was no longer on payroll after October 8, 2021. (FAC ¶¶ 118-121).

Plaintiff does not directly respond to Defendants' argument, but rather maintains that the Board Panel Decision regarding her works compensation claim "further highlight[s] the unreasonableness and retaliatory intent behind the refusal to place Plaintiff on restrictive duty." (Pl. Br. at 37). Accordingly, Plaintiff appears to have abandoned her argument that the Town retaliated against her by failing to timely submit her workers compensation paperwork.

### iii.    Fourth element: Causal Connection

Defendants argue that Plaintiff failed to establish a causal connection as to two of the eight categories of allegedly retaliatory conduct—(i) the MVA Investigation and resulting Letter of Supervisory Notice; and (ii) the April 16, 2021 Investigation and resulting Letter of Supervisory Notice. (Reply at 14-16). "For purposes of a retaliation claim, causation can be established in one of three ways: with evidence that the retaliatory action happened close in time to the protected activity; that other similarly situated employers were treated differently; or with direct proof of discriminatory animus." *Ball v. Marriott Int'l, Inc.*, 627 F. Supp. 3d 296, 322 (S.D.N.Y. 2022) (quoting *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 528 (S.D.N.Y. 2009)).

First, with respect to the MVA Investigation, Defendants argue that Plaintiff cannot rely on temporal proximity to establish causation because the October 5, 2020 accident is an intervening event that breaks the chain of causation. (Reply at 14-15). While it is true that "[m]isconduct by a plaintiff qualifies as an intervening event that defeats an inference of retaliation," *Rossbach v. Montefiore Med. Ctr.*, No. 19-CV-05758, 2021 WL 930710, at *7 (S.D.N.Y. Mar. 11, 2021), an issue of fact exists here as to whether Plaintiff engaged in misconduct that caused the motor vehicle accident. (56.1 ¶ 138; Pl. Br. at 27-28). Plaintiff disputes that her speed was not appropriate as an evasive maneuver. (*Id.*). Accordingly, the Court cannot find as a matter of law that Plaintiff engaged in misconduct that breaks the chain of causation.

Second, as to the April 16, 2021 Investigation, Defendants argue that there is insufficient evidence of causation because the Letter of Supervisory Notice was issued nine months after the August 5, 2020 EEOC Complaint was filed. (Reply at 15-16). The April 16, 2021 Investigation commenced just over seven months after Defendants became aware of Plaintiff's EEOC Complaint. Although the Second Circuit has "not drawn a bright line to define the outer limits of temporal proximity in the Title VII retaliation context," *Bamba v. Fenton*, 758 F. App'x 8, 12 (2d Cir. 2018), it has held that seven months between a protected activity and an adverse employment action was "sufficient to raise an inference of causation." *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013). Therefore, causation is sufficiently established by the April 16, 2021 Investigation's temporal proximity to the EEOC Complaint.

Plaintiff has established a *prima facie* case of retaliation as to each of the above-identified categories of alleged retaliatory conduct except for: (i) her being assigned more frequently to "6 Post"; (ii) her being denied restricted duty and forced to go on unpaid leave; and (iii) the Town's failure to timely file paperwork regarding her July 2021 workers comp claim. Accordingly, "the burden shifts to [Defendants] to give a legitimate, non-discriminatory reason for [their] actions." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014).

B.  Phases Two and Three: Legitimate, Non-Discriminatory Reason and Pretext

Defendants argue that they had legitimate, non-retaliatory reasons for four of the five remaining categories of alleged retaliatory conduct: (i) the MVA Investigation and resulting Letter of Supervisory Notice; (ii) the April 16, 2021 Investigation regarding Plaintiff leaving her post and resulting Letter of Supervisory Notice; (iii) the April 27, 2021 Investigation regarding Plaintiff's commendation request and resulting Letter of Supervisory Notice; and (iv) Plaintiff's brother not

being selected for the SWAT Team. (Def. Br. at 34-39). Plaintiff does not dispute the legitimate, non-discriminatory reasons proffered by Defendants for these events. (Pl. Br. at 14, 27, 30, 33-34).

The burden thus shifts back to Plaintiff to demonstrate that Defendants' reasons were a pretext for retaliation. *Lopez v. White Plains Hosp.*, No. 22-817, 2022 WL 19835765, at *1 (2d Cir. May 16, 2022). "A plaintiff can demonstrate pretext 'by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered reason, or by providing evidence such that a reasonable factfinder could conclude that the prohibited reason was a 'motivating factor' in the adverse employment action.'" *Amley v. Sumitomo Mitsui Banking Corp.*, No. 19-CV-03777, 2021 WL 4429784, at *16 (S.D.N.Y. Sept. 27, 2021) (quoting *Greenberg v. State Univ. Hosp. Downstate Med. Ctr.*, 838 F. App'x 603, 606 (2d Cir. 2020)). The admissible evidence offered by a plaintiff must go beyond "self-serving and conclusory allegations that the defendants' proffered reasons were false." *Hartley v. Rubio*, 785 F. Supp. 2d 165, 180 (S.D.N.Y. 2011). "Moreover, an employer's decisions are given deference by the court unless they are clearly pretextual." *Id*. (citing *Deabes v. Gen. Nutrition Corp.*, 415 Fed. App'x 334, 336 (2d Cir. 2011)). Here, Plaintiff argues that "mounting internal investigations and the issuance of multiple Letters of Supervisory Notice" were a pretext to discipline her in retaliation for filing the EEOC Complaint. (Pl. Br. at 27).

### i.  The MVA Investigation

Defendants argue that they have a legitimate interest in review and preventing officer-involved motor vehicle accidents. (Def. Br. at 35). Plaintiff argues, however, that Defendants' investigation of the October 5, 2020 accident was a pretext to discipline her. (Pl. Br. at 13-14). Plaintiff argues that the manner in which she was interviewed supports an inference that Defendants were seeking to create facts to support the imposition of discipline, and that the

investigatory report omits the fact that she accelerated as a defensive maneuver. (*Id*. at 28 (citing Cossu Decl., Exs. 13, 14, 22, 70, 71)). Plaintiff further argues that Defendants placed more scrutiny on her accident than was typical and compares her situation with that of two GPD officers who were involved in motor vehicle accidents but not investigated or disciplined. (*Id*. at 29-30).

The first comparator made a defensive evasive maneuver to try to avoid collision with another vehicle that had turned in front of him and, in doing so, struck another vehicle. (Cossu Decl., Ex. 72). The officer was reportedly "unable to avoid [the] accident due to the actions" of the other car. (*Id*.). The second comparator reversed down a street at nighttime and struck a parked vehicle. (*Id*., Ex. 73). Defendants attempt to distinguish these comparators and offer examples of other officers who, like Plaintiff, were involved in "more serious accidents," investigated, and reprimanded. (Reply at 15 (citing 56.1 ¶¶ 141-144)). The Court finds that at least the first comparator is sufficiently similarly situated to Plaintiff to be considered evidence of pretext. That officer was involved in a motor vehicle accident that was primarily the fault of another driver and, contrary to Plaintiff, was not investigated for his role in the accident. Accordingly, Plaintiff has met her burden at this stage to establish a genuine dispute as to whether the proffered reason for the MVA Investigation was pretextual.

### ii. April 16, 2021 Investigation

Defendants argue that they have a legitimate interest in ensuring that officers cover their post and perform their duties in accordance with the rules set out in the GPD Manual. (Def. Br. at 37). Plaintiff contends, however, that the April 16, 2021 Investigation was a pretext to discipline her. (Pl. Br. at 30-31). She describes the manner in which the interview was conducted, including her male supervisors' "palpable discomfort and bias" and the tone of voice used during the interview, to support a finding of pretext. (*Id*.). Plaintiff also argues that the investigatory report

omitted or incorrectly stated relevant facts, and that the rules permit an officer being off-post without being "properly relieved" in cases of "personal necessity." (*Id.* at 31-32).

Plaintiff's offer of proof is insufficient to establish a genuine issue of fact that the April 16, 2021 Investigation was pretext for retaliation. Plaintiff's arguments as to the inaccuracies in the investigatory report and incorrect application of GDP rules essentially amount to disagreement with her supervisors about whether she deserved to be reprimanded. *See Carter v. TD Bank, N.A.*, No. 20-CV-01616, 2023 WL 3818589, at *8 (D. Conn. June 5, 2023) ("Plaintiff's protestations that he did nothing wrong, and that both the conclusion and process of Defendant's ethics investigation were flawed, are not sufficient to withstand summary judgment."); *Uttarwar v. Lazard Asset Management LLC*, No. 24-1085-CV, 2025 WL 704278, at *3 (2d Cir. Mar. 5, 2025) (summary order) ("[Plaintiff's] burden at this stage was to create a genuine dispute that the proffered reasons were a pretext for discrimination—not just that the proffered reasons were incorrect."). Plaintiff offers no evidence that she was singled out by Matthews or that the rules regarding personal breaks were selectively enforced against her. Accordingly, Plaintiff has not offered sufficient evidence to sustain a retaliation claim based on the April 16, 2021 Investigation.

### iii.   April 27, 2021 Investigation

Defendants argue that they have a legitimate interest in ensuring that its officers provide accurate and complete accounts of incidents in which they are involved, and that commendations are awarded based on accurate reports of officer conduct. (Def. Br. at 38). Plaintiff responds that the April 27, 2021 Investigation into her commendation requests was pretextual given that it was commenced the same day that she provided a written retaliation complaint to the Town. (Pl. Br. at 33; Pl. Decl. ¶ 26). Plaintiff also argues that she was targeted for extra scrutiny with respect to this investigation, as evidenced by the testimony of Powell and Farina confirming that they had never

before investigated the accuracy of a commendation request. (Pl. Br. at 33-34; Scheibel Decl., Ex. J at 215:20-24; *id*., Ex. K at 106:4-12). Finally, Plaintiff argues that she neither failed to perform a duty nor violated any rules, as requests for commendation are not "reports" that justify Letters of Supervisory Notice. (Pl. Br. at 33-34). On this record, Plaintiff has offered sufficient evidence of selective enforcement to create an issue of fact as to whether the proffered reasons for this investigation were pretextual.

### iv.  *Plaintiff's Brother Not Selected for SWAT Team*

Plaintiff alleged that Defendants' retaliatory conduct extended to acts taken against her brother, Matthew Stein, including his being passed over for positions within the GPD. (FAC ¶ 114). Defendants argue that they had legitimate concerns about Matthew Stein's performance which justify their decision not to select him for the GDP SWAT Team. (Def. Br. at 38). Plaintiff does not respond to Defendants' proffered legitimate, non-discriminatory reason nor identify any evidence that Defendants' decision was pretextual. Indeed, it is undisputed that the only individual who joined the GDP SWAT team after Matthew Stein took the eligibility tests was the individual who ranked ahead of him on the tests. (56.1 ¶ 183). Accordingly, Plaintiff's retaliation claims fail to the extent they are based on Defendants' decision not to select her brother for the GDP SWAT Team; and there is no viable pretext theory here.

In light of the Court's findings herein, the Court grants Defendants summary judgment on Plaintiff's Title VII and Section 1983 retaliation claims (Fourth and Seventh Claims for Relief) based on the following alleged retaliatory conduct: (i) Plaintiff being assigned more frequently to 6-Post; (ii) the April 16, 2021 Investigation regarding Plaintiff leaving her post and resulting Letter of Supervisory Notice; (iii) Plaintiff's brother not being selected for the SWAT Team; (iv) the Town's failure to timely file paperwork regarding Plaintiff's July 2021 workers comp claim; and

(v) Defendants' refusal to place Plaintiff on restricted duty thereby forcing her to take unpaid leave. The Court likewise grants Defendants summary judgment on Plaintiff's NYSHRL retaliation claim (Fourteenth Claim for Relief) which is based only on Defendants' alleged denial of restricted duty. (Pl. Br. at 23 n.6).

The Court denies summary judgment on Plaintiff's Title VII and Section 1983 retaliation claims (Fourth and Seventh Claims for Relief) based on the remaining three categories of alleged retaliatory conduct: (i) Defendants' treatment of Plaintiff on the midnight shift, including co-workers ignoring her and delaying in providing back-up; (ii) the MVA Investigations and resulting Letters of Supervisory Notice; and (iii) the April 27, 2021 Investigation regarding Plaintiff's commendation request and resulting Letter of Supervisory Notice.

III.    Fifth and Sixth Claims for Relief: Discrimination based upon Gender and Sexual Orientation and Sexual Harassment

Plaintiff's Fifth Claim for relief alleges discrimination based upon gender and sexual orientation in violation of the First and Fourteenth Amendments pursuant to Section 1983. (FAC ¶¶ 163-169). Plaintiff's Sixth Claim for Relief alleges a claim for sexual harassment pursuant to Section 1983. (*Id*. ¶¶ 170-176). Defendants argue that both claims are duplicative of Plaintiff's Third and Eighth Claims for Relief alleging hostile work environment. (Def. Br. at 39). Plaintiff does not respond to Defendants' argument that the claims are duplicative. (Pl. Br. at 38-39).

Sexual harassment is a "form of sex discrimination." *Kasperek v. New York State, Dep't of Corr. & Cmty. Supervision*, No. 16-CV-00671, 2021 WL 6755198, at *13 (W.D.N.Y. Aug. 31, 2021), *adopted by*, 2022 WL 682633 (W.D.N.Y. Mar. 8, 2022). "[W]here, as here, a distinct sex-discrimination claim is premised on the same theory as a claim for sexual harassment, the separate sex discrimination claim is unnecessary and duplicative." *Id*.; *see also Bethea v. City of New York*, No. 11-CV-02347, 2014 WL 2616897, at *8 (E.D.N.Y. June 12, 2014) (dismissing gender

discrimination claim where the "[p]laintiff has set forth no factual allegations in support of any claim for gender discrimination that is separate from her *quid pro quo* and hostile environment sexual harassment claims."); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 585 (S.D.N.Y. 2011).

Plaintiff's claims for discrimination and sexual harassment appear to be based on the same allegations as those underlying her hostile work environment claims. (Pl. Br. at 39 (discussing the Cerone Incident); FAC ¶¶ 163-176). Accordingly, and in light of the Court's dismissal of Plaintiff's hostile work environment claims, Defendants' motion for summary judgment is likewise granted as to the Fifth and Sixth Claims for Relief.

IV.    Ninth Claim for Relief: Unfair Discipline and Denial of Equal Protection

Plaintiff's Ninth Claim for Relief alleges a claim for unfair discipline and denial of Equal Protection pursuant to Section 1983 against Defendants Powell, Matthews and Farina. (FAC ¶¶ 185-188). Defendants argue that this claim should be dismissed for the same reasons that dismissal is warranted as to Plaintiff's Seventh Claim for Relief alleging retaliation. (Def. Br. at 39). In light of the Court's rulings on Plaintiff's retaliation claims for relief, discussed *supra*, the Court denies the motion for summary judgment as to the Ninth Claim for Relief to the extent it is based on: (i) Defendants' treatment of Plaintiff on the midnight shift, including co-workers ignoring her and delaying in providing back-up; (ii) the MVA Investigations and resulting Letters of Supervisory Notice; and (iii) the April 27, 2021 Investigation regarding Plaintiff's commendation request and resulting Letter of Supervisory Notice. The Court otherwise grants the motion as to the Ninth Claim for Relief.

V.      Tenth Claim for Relief: Violation of Equal Protection and Denial of Due Process

Plaintiff's Tenth Claim for Relief alleges a claim for violation of Equal Protection and denial of Due Process pursuant to Section 1983. (FAC ¶¶ 189-195). To the extent Plaintiff asserts an Equal Protection claim under Section 1983 based on Defendants' creation of a hostile work environment, that claim is dismissed for the same reasons that Plaintiff's Third and Eighth Claims for Relief alleging a hostile work environment were dismissed. Moreover, to the extent Plaintiff asserts a violation of her Due Process rights, Defendants argue that Plaintiff was never deprived a constitutionally protected property or liberty interest and was provided with all the process she was due. (Def. Br. at 29-40). Plaintiff did not respond to Defendants' arguments and thus appears to have abandoned the claim. (Reply at 7 n.2). *See Allegrino v. Ruskin Moscou Faltischek, P.C.*, No. 19-CV-08900, 2021 WL 429121, at *5, *8 (S.D.N.Y. Feb. 8, 2021), *aff'd*, No. 21-484-CV, 2021 WL 5500084 (2d Cir. Nov. 24, 2021). Accordingly, Defendants' motion for summary judgment is granted as to the Tenth Claim for Relief.

VI.      Eleventh Claim for Relief: *Monell* Violation

Plaintiff's Eleventh Claim for Relief asserts a claim for municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ("*Monell*"). Under *Monell* and its progeny, a municipality may be held liable where a plaintiff's constitutional rights are violated because of a municipal policy or custom. *See Jimenez v. City of New York*, No. 18-CV-07273, 2020 WL 1467371, at *3 (S.D.N.Y. Mar. 26, 2020). "[T]o prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the injury." *Triano v. Town of*

*Harrison, New York*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (quoting *Roe v. City of Waterbury*,

542 F.3d 31, 36 (2d Cir. 2008)).

As discussed *supra*, the Court has found a triable issue of fact as to the underlying

constitutional violation of retaliation but not as to hostile work environment. With respect to

retaliation, Plaintiff has failed to offer evidence of an official policy or custom that subjected her

to retaliation. Plaintiff's personal experience with retaliatory investigations is insufficient on its

own as evidence of a municipal policy or practice. (Pl. Br. at 44). *See Schuyler v. City of New

Rochelle*, No. 23-CV-04151, 2024 WL 167289, at *3 (S.D.N.Y. Jan. 16, 2024) ("A plaintiff cannot

establish a *Monell* claim solely on the circumstances of his own case."); *Smith v. Westchester Cty.*,

No. 19-CV-01283, 2019 WL 5816120, at *5 (S.D.N.Y. Nov. 7, 2019) (dismissing *Monell* claim

where plaintiff "describe[d] only his own experiences"); *Oriental v. Vill. of Westbury*, No. 18-CV-

03878, 2019 WL 4861413, at *4 (E.D.N.Y. Oct. 2, 2019) (dismissing *Monell* claim where "the

complaint contain[ed] only a detailed account of plaintiffs' own experiences"). And, as discussed

*supra*, Plaintiff failed to establish that her brother was subjected to retaliation when he was passed

over for the GDP SWAT Team. (Pl. Br. at 45 (citing Cossu Decl., Ex. 9 ¶¶ 9-10)). Accordingly,

Plaintiff has not shown evidence of a municipal policy or custom with respect to her retaliation

claims, and the Court grants Defendants summary judgment as to the Eleventh Claim for Relief.

VII.    Individual Liability

Finally, Defendants argue that Plaintiff failed to establish personal involvement of the

individual defendants and, in any event, the affirmative defense of qualified immunity applies.

(Def. Br. at 42-47). The remaining individual defendants are Powell, Matthews, Farina, and

Cerone.

A.    Personal Involvement

Unlike Title VII, Section 1983 and the NYSHRL provide for individual liability. In general, to prove individual liability based on either of these claims for relief, a plaintiff most show that the individual was personally involved in the alleged violations of rights. *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004) (Section 1983); *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004) (NYSHRL). With respect to Section 1983, simply being a supervisor is not enough to impute personal involvement onto a defendant; liability exists only where the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Assertions of personal involvement that are merely speculative are insufficient to establish a triable issue of fact. *See, e.g.*, *Keesh v. Quick*, No. 19-CV-08942, 2022 WL 2160127, at *9 (S.D.N.Y. June 15, 2022). Moreover, under the NYSHRL, the plaintiff must demonstrate the defendant "actually participate[d] in the conduct giving rise to a discrimination claim," *Feingold*, 366 F.3d at 189-59.

Here, the record reflects that Powell and Farina were personally involved in the allegedly retaliatory investigations (56.1 ¶¶ 92-95, 97, 122, 135, 156, 158, 167, 170, 172) and that Farina issued the Letters of Supervisory Notice to Plaintiff (*id.* ¶¶ 137, 161, 173). Matthews' involvement, however, is limited to the April 16, 2021 Investigation, which the Court found to be not actionable retaliatory conduct. (*Id.* ¶¶ 145-163; Def. Br. at 46). As to Cerone, it is undisputed that he was reassigned from the midnight shift after the January 19, 2019 incident and never worked in the same squad with Plaintiff or spoke to her again. (56.1 ¶ 84). Cerone therefore was not involved in any of the alleged retaliatory conduct toward Plaintiff. Accordingly, Matthews and Cerone are entitled to summary judgment dismissing the Section 1983 and NYSHRL claims asserted against them.

B. Qualified Immunity

Finally, Defendants argue that Powell and Farina are entitled to summary judgment on the basis of qualified immunity. (Def. Br. at 44-46). The affirmative defense of "[q]ualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (quoting *McGowan v. United States*, 825 F.3d 118, 124 (2d Cir. 2016)). If an official's belief that his action does not violate clearly established law is "objectively reasonable," he or she is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013).

Here, as discussed *supra*, issues of fact remain as to whether the Plaintiff was investigated and issued Letters of Supervisory Notice in a retaliatory manner. The Court cannot find as a matter of law that Powell's and Farina's actions in investigating Plaintiff's purported misconduct and counseling Plaintiff with Letters of Supervisory Notice did not violate any clearly established statutory or constitutional rights of which reasonable persons would have known. *See Nazario v. Thibeault*, No. 22-01657, 2023 WL 7147386, at *2 (2d Cir. Oct. 31, 2023) (open material issues of fact preclude finding of qualified immunity); *Basora v. City of Poughkeepsie*, No. 22-CV-03300, 2025 WL 50322, at *4 (S.D.N.Y. Jan. 8, 2025) (in light of existence of fact disputes precluding summary judgment, "the Court must also reject Defendants' argument concerning its affirmative defense of qualified immunity at this juncture."). Accordingly, the Court declines to grant summary judgment based on the affirmative defense of qualified immunity.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

Defendants' motion is granted as to the Third, Fifth, Sixth, Eighth, Tenth, Eleventh, and Fourteenth Claims for Relief.[12] Defendants' motion is also granted as to the Fourth, Seventh, and Ninth Claims for Relief to the extent they are based on the following theories: (i) Plaintiff being assigned more frequently to "6 Post"; (ii) the April 16, 2021 Investigation regarding Plaintiff leaving her post and resulting Letter of Supervisory Notice; (iii) Plaintiff's brother not being selected for the SWAT Team; (iv) the Town's failure to timely file paperwork regarding Plaintiff's July 2021 workers comp claim; and (v) Defendants' refusal to place Plaintiff on restricted duty thereby forcing her to take unpaid leave. Finally, Defendants' motion is granted to the extent it seeks to dismiss Matthews and Cerone as individual defendants in this action.

Defendants' motion is denied as to the Fourth, Seventh, and Ninth Claims for Relief to the extent they are based on the following theories: (i) Defendants' treatment of Plaintiff on the midnight shift, including co-workers ignoring her and delaying in providing back-up; (ii) the MVA Investigations and resulting Letters of Supervisory Notice; and (iii) the April 27, 2021 Investigation regarding Plaintiff's commendation request and resulting Letter of Supervisory Notice. Defendants' motion is also denied to the extent it seeks to dismiss Powell and Farina as individual defendants in this action; and  for qualified immunity.

_____

[12] In any event, the Sixth and Eighth Claims for Relief are alleged as "violation[s] of 42 U.S.C. § 1983" without specific reference to any constitutional right or other statutory right (FAC ¶¶ 171, 182), and, therefore, fail to state a claim for relief as a matter of law. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' The first step in any such claim is to identify the specific constitutional right allegedly infringed.").

Accordingly, Defendants' Fourth, Seventh, and Ninth Claims for Relief, premised only on the three remaining theories, will proceed to trial, as appropriate, against the Town, Powell, and Farina. The parties shall, by April 24, 2025, file those materials required by Rules 6(A) and 6(B) of this Court's Individual Practices.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 146.

**SO ORDERED:**

Dated:    White Plains, New York
          March 25, 2025

_____
PHILIP M. HALPERN
United States District Judge