UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- X   Docket No.: 7:21-cv-05673-PMH

KRISTIN STEIN,                                                         :
                                                                      :
      Plaintiff,                       :
                                                                      :
-against-                                                             :
                                                                      :
TOWN OF GREENBURGH, KOBIE POWELL in his                               :
official capacity as a Lieutenant and individually, and               :
FRANK FARINA in his official capacity as a Patrol                     :
Captain and individually,                                             :
                                                                      :
      Defendants.                       :
--------------------------------------------------------------------- X


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE*


**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**
*Attorneys for Defendants Town of Greenburgh, Kobie Powell, and Frank Farina*
1133 Westchester Avenue
White Plains, New York 10604
(914) 323-7000

310802440v.4

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

RELEVANT BACKGROUND .............................................................................................. 1

ARGUMENT .......................................................................................................................... 5

    I.      Legal Standard ............................................................................................. 5

    II.     Evidence Relating to Plaintiff's Dismissed Claims of Hostile Work Environment, Discrimination/Harassment, and Retaliation Are Irrelevant to the Remaining Claims and Overly Prejudicial To Defendants ............................. 6

          A.     Evidence Regarding PO Kozakiewicz and PO Cerone (Including Plaintiffs' Proposed Exhibits P-9 through P-11, P-13 through P-15, P-20 through P-25) ............................................................................. 8

          B.     The Substance of Plaintiff's EEOC Complaints and SIU Investigation 20-040. (P-19 through P-25, P-85) ......................... 9

          C.     Evidence regarding Other Alleged Retaliation, including SIU Investigations 21-009 and 21-010, Alleged Interference with Job Applications, Plaintiff's Worker's Comp Application, Restricted Duty Request, and Issues Investigated Separately by the Town (P-17, P-18, P-48 through P-56, P-71 through P-71) ..................... 10

          D.     Testimony from David Zenon ................................................. 11

          E.     Damages Evidence Related to Dismissed Claims ..................... 12

               1.     All Evidence of Economic Damages Should Be Precluded .......... 12

               2.     All Evidence of Plaintiff's Emotional Distress Allegedly Caused by the Dismissed Claims Should Be Precluded (Including Plaintiff's PTSD, Depression, Anxiety Diagnoses and Her Expert Dr. Siegert) Alternatively, the Liability and Damages Phases of the Case Should Be Bifurcated ..................... 14

               3.     All Evidence Regarding Plaintiff's Gastrointestinal Issues, Which Were Attributed to the January 19, 2019 Incident, Should Be Excluded ..................................................................... 16

i

F.   Post-June 15, 2021 Evidence, including Plaintiff's July 2021 Workers Compensation Application and Request for Restricted Duty (P-7[sic] Taglia Letter dated 8/30/2021, P-74 (Fed Compl.) P-75 AOS, P-76 through P-86 (workers comp file)) .....................................17

III.   Evidence of Unrelated Complaints of Hostile Work Environment or Harassment Are Irrelevant and Should Be Excluded ..............................................18

IV.   Plaintiff's Expert Joseph Pollini Should Be Precluded from Testifying ...............19

1.   Pollini Should Be Precluded From Testifying About the "Blue Wall of Silence"...................................................................................................20

2.   Pollini's Opinions on Plaintiff's Remaining Claims are Irrelevant, Do Not Employ Reliable Methodologies, and Will Not Assist the Trier of Fact .............................................................................................23

V.   Evidence Regarding Unrelated Complaints Against the Defendants and Any Resulting Disciplinary History is Irrelevant and Overly Prejudicial ...................26

VI.   Plaintiff Should Be Precluded From Suggesting a Specific Sum for Non-Economic Damages and From Presenting Evidence that the Individual Defendants Will Be Indemnified .........................................................................27

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Dept of Public Safety,*
  764 F.3d 244 (2d Cir. 2012).......................................................................................6

*Amato v. City of Saratoga Springs,*
  170 F.3d 311 (2d Cir. 1999)......................................................................................16

*Amorgianos v. Nat'l R.R. Passenger Corp.,*
  303 F.3d 256 (2d Cir. 2002)......................................................................................20

*Arista Records LLC v. Usenet.com, Inc.,*
  608 F. Supp. 2d 409 (S.D.N.Y. 2009)..................................................................23, 25

*Barban v. Rheem Textile Sys.,*
  147 F. App'x 222 (2d Cir. 2005) ...............................................................................23

*Bee v. Novartis Pharm. Corp.,*
  18 F.Supp.3d 268 (E.D.N.Y. 2014) ...........................................................................20

*Benzinger v. Lukoil Pan Ams., LLC,*
  2021 U.S. Dist. LEXIS 23597 (S.D.N.Y. Feb. 8, 2021) ...............................................6

*Boucher v. U.S. Suzuki Motor Corp.,*
  73 F.3d 18 (2d Cir. 1996)..........................................................................................20

*Bradshaw v. Fletcher,*
  2024 U.S. Dist. LEXIS 6440 (N.D.N.Y. Jan. 12, 2024)........................................17, 27

*Castro v. City of N.Y.,*
  2010 U.S. Dist. LEXIS 155135 (S.D.N.Y. Aug. 5, 2010) ...........................................27

*Coudert v. Janney Montgomery Scott, LLC,*
  2004 U.S. Dist. LEXIS 21135 (D. Conn. Oct. 7, 2004) ........................................18, 27

*Daubert v. Merrell Dow Pharmaceuticals,*
  509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)...............................6, 20, 26

*Domenech v. City of New York,*
  919 F. supp. 702 (S.D.N.Y. 1996) .............................................................................21

*Est. of Jaquez v. City of New York,*
  104 F. Supp. 3d 414 (S.D.N.Y. 2015).........................................................................22

iii

*Evans v. Port Auth.*,
    2005 U.S. Dist. LEXIS 22049 (S.D.N.Y. Sep. 30, 2005) ...................................................... 27

*Facci-Brahler v. Montgomery Cnty.*,
    2025 U.S. Dist. LEXIS 41159 (N.D.N.Y. Mar. 7, 2025) ....................................................... 12

*Ferreira v. City of Binghamton*,
    2016 U.S. Dist. LEXIS 126011 (N.D.N.Y. Sept. 16, 2016) .................................................. 28

*Hannah v. Wal-Mart Stores, Inc.*,
    2017 U.S. Dist. LEXIS 23681 (D. Conn. Feb. 21, 2017) *aff'd Hannah v. Walmart*
    *Stores, Inc.,* 803 F. App'x 417 (2d Cir. Feb. 3, 2020) .................................................. 6

*Hill v. City of New York*,
    2007 U.S. Dist. LEXIS 48641 (E.D.N.Y. July 5, 2007) ...................................................... 21

*Jackson v. City of White Plains*,
    2016 U.S. Dist. LEXIS 6469 (S.D.N.Y. Jan. 19, 2016) ....................................................... 5

*Jean-Laurent v. Hennessy*,
    840 F. Supp. 2d 529 (E.D.N.Y. 2011) ................................................................................... 5

*Julian v. New York City Transit Auth.*,
    857 F. Supp. 242 (E.D.N.Y. 1994) ........................................................................................ 4

*Kokoska v. City of Hartford*,
    2014 U.S. Dist. LEXIS 133262 (D. Conn. Sept, 23, 2014) ................................................ 17

*Krys v. Sugrue*,
    2012 U.S. Dist. LEXIS 185904 (S.D.N.Y. Apr. 9, 2012) ...................................... 6, 7, 12, 21

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ........................................................................................................... 19

*Lichtenstein v. Triarc Companies, Inc.*,
    2004 U.S. Dist. LEXIS 8610, 2004 WL 1087263 (S.D.N.Y. 2004) ...................................... 7

*Lightfoot v. Union Carbide Corp.*,
    110 F.3d 898 (2d Cir. 1997) ............................................................................................... 28

*Luce v. U.S.*,
    469 U.S. 38, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984) ........................................................ 5

*Maldonado v. Town of Greenburgh*,
    2024 U.S. Dist. LEXIS 175235 (S.D.N.Y. Sept. 26, 2024) ................................................ 22

*Manning v. N.Y. Univ.*,
    2001 U.S. Dist. LEXIS 510 (S.D.N.Y. Jan. 24, 2001) ....................................................... 27

*Martin v. Reno*,
    2000 U.S. Dist. LEXIS 18278 (S.D.N.Y. Dec. 18, 2000) .................................................11, 27

*Morales v. N.Y. Dep't of Labor*,
    2012 U.S. Dist. LEXIS 92075 (N.D.N.Y. July 3, 2012).........................................................6

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005).........................................................................................19, 25

*Palmieri v. Defaria*,
    88 F.3d 136 (2d Cir. 1996)..................................................................................................5

*Peck v. County of Onondaga*,
    2025 U.S. Dist. LEXIS 15193 (N.D.N.Y. 2025) .................................................................10

*Raspardo v. Carlone*,
    770 F.3d 97 (2d Cir. 2014)................................................................................................24

*Richmond v. General Nutrition Ctrs., Inc.*,
    2012 U.S. Dist. LEXIS 32070 (S.D.N.Y. 2012) .................................................................10

*Ross v. Guy*,
    2022 U.S. Dist. LEXIS 44714 (E.D.N.Y. Mar. 14, 2022) ...................................................28

*Schiano v. Quality Payroll Sys.*,
    445 F.3d 597 (2d Cir. 2006).................................................................................................8

*Schlant v. Victor Belata Belting Co.*,
    2001 U.S. Dist. LEXIS 16539 (W.D.N.Y. Oct. 2, 2001).....................................................16

*Todaro v. Siegel Fenchel & Peddy*,
    2008 U.S. Dist. LEXIS 140811 (E.D.N.Y. Aug. 11, 2008)..................................................12

*Torain v. City of Philadelphia*,
    2023 U.S. Dist. LEXIS 5657 (E.D.Pa. Jan. 12, 2023) ..........................................................25

*Tulino v. Ali*,
    2019 U.S. Dist. LEXIS 46264 (S.D.N.Y. Feb. 27, 2019) *aff'd* 813 Fed. Appx. 725 (2d
    Cir. 2020) ...................................................................................................................12, 13

*U.S. v. Bermudez*,
    529 F.3d 158 (2d Cir. 2008).................................................................................................5

*U.S. v. Litvak*,
    808 F.3d 160 (2d Cir. 2015).................................................................................................5

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991)............................................................................................26

v

*Williams v. Boley*,
    2023 U.S. Dist. LEXIS 114757 (S.D. Ind. July 5, 2023) ........................................................21

*Woolfolk v. Baldofsky*,
    2022 U.S. Dist. LEXIS 120838 (E.D.N.Y. July 8, 2022) ...................................................21, 28

**Statutes**

42 U.S.C. § 1983 ................................................................................................................3, 4, 7, 9, 28

**Rules**

Fed. R. Evid. 402 ...........................................................................................................................5, 18, 19

Fed. R. Evid. 403 .......................................................................................................................5, 7, 18, 19

Fed. R. Evid. 407 ......................................................................................................................................19

Fed. R. Evid. 702 .................................................................................................................6, 19, 20, 23

**Other Authorities**

https://www.ncbi.nlm.nih.gov/books/NBK207191/box/part1_ch3.box16/ ..................................13

310802440v.4

## PRELIMINARY STATEMENT

Over the course of this litigation, 11 of the Plaintiff's 14 original claims, 14 of the 17 original defendants, and numerous bases for the three remaining claims, have been dismissed. However, reading Plaintiff's proposed trial exhibit list, one would never know that a single claim had been dismissed.[1]  It is clear from Plaintiff's pre-trial submissions that she intends to present all of her original claims to the jury, ignoring law of the case doctrine and pretending this Court's prior orders never happened.

Accordingly, the remaining defendants, Town of Greenburgh, Frank Farina, and Kobie Powell (collectively, "Defendants") respectfully submitted this memorandum of law in support of their motion *in limine* seeking to preclude (1) evidence regarding Plaintiff's dismissed hostile work environment, discrimination, and retaliation claims and related alleged damages; (2) evidence regarding unrelated complaints and investigations of discrimination or hostile work environment at GPD including the Attalienti investigation, Olson investigation, and any investigations of the work environment at GPD occurring after Plaintiff's departure from active duty; (3) Plaintiff's purported police practices expert Joseph Pollini; (4) evidence regarding unrelated complaints and disciplinary history of Defendants; (5) evidence that the Town will indemnify the individual defendants and (6) precluding Plaintiff from seeking a specific amount of emotional distress damages.

## RELEVANT BACKGROUND

In her complaint, Plaintiff, a GPD police officer, alleged that she was subjected to sexual harassment by PO Kozakiewicz in 2017.  Plaintiff further alleged that another officer, PO Cerone,

---

[1] There are dozens of exhibits on Plaintiff's trial exhibit list that have nothing whatsoever to do with the three remaining claims in this case.

sent her inappropriate text messages while they worked together on the midnight tour in 2018 and that Cerone assaulted her during roll call on January 19, 2019. The January 19, 2019 altercation was witnesses by Lt. Martin, who immediately reprimanded PO Cerone, and reported the incident, which was investigated by the Special Investigations Unit ("SIU"). Plaintiff participated in the investigation and PO Cerone, was removed from Plaintiff's shift, found to have violated CPD procedures, and reprimanded.

In August 2020, Plaintiff filed a charge of discrimination with the EEOC, complaining, for the first time, that Kozakiewicz sexually harassed her when he was her FTO in 2017 and that Cerone's contact with her on January 19, 2019 was sexual in nature.

On October 5, 2020, Plaintiff was in a motor vehicle accident ("MVA") while on duty which resulted in injury to Plaintiff, keeping her out of work for 2 months and in significant vehicle damage. Pursuant to GPD's practices regarding officer-involved MVAs, the accident was investigated. At the conclusion of the investigation, Plaintiff received a Letter of Supervisory Notice, counselling her to follow the traffic laws; no discipline was imposed.

In April 2021, during the Commendations Board process, concerns were raised about the accuracy of two commendation requests that Plaintiff had written for herself. The concerns were referred to SIU for investigation. Based on a comparison of Plaintiff's commendations requests and the underlying case records (including Plaintiff's body camera footage), it was determined that Plaintiff's commendation requests were inaccurate and she was issued a Letter of Supervisory Notice on June 15, 2021, advising her of the importance of accurate reporting. No discipline was imposed.

Also in April 2021, Plaintiff was investigated by SIU after a supervisor, Lt. Matthews, wrote-up Plaintiff after she took an unauthorized break during the middle of a fight in Town to

which other officers were being dispatched.  This investigation also resulted in a Letter of Supervisory Notice.

On July 1, 2021, Plaintiff filed the instant action.  Plaintiff ceased working active duty as a GPD patrol officer on July 4, 2021, and subsequently submitted claims for workers compensation, reporting for the first time that she suffered from gastrointestinal and mental health issues arising from the January 19, 2019 incident.  On or about September 23, 2021, after commencing this action, Plaintiff filed a second Charge of Discrimination with the EEOC.  On March 3, 2022, Plaintiff filed an Amended Complaint.

Plaintiff asserted 14 causes of action against 17 different defendants alleging hostile work environment, discrimination, and various alleged acts of retaliation pursuant to Title VII, the NYS Human Rights Law, and 42 U.S.C. § 1983.  Over the course of litigation, 14 defendants and 11 causes of action have been dismissed.  The only claims remaining for trial are for retaliation under Title VII and Section 1983 based on three alleged adverse actions.

Specifically, in a March 28, 2023 Opinion and Order this Court granted the Defendants' motion to dismiss, in part, dismissing the First (Gender and Sexual Orientation Discrimination under Title VII), Second (Sexual Harassment under Title VII), Twelfth (Discrimination under New York State Human Rights Law ("NYSHRL") § 296(1)), and Thirteenth (Unlawful Conduct under NYSHRL § 296(6)) causes of action in their entirety.  DE #107 at 18.  After the filing of Defendants' pre-motion summary judgment letter, Plaintiff voluntarily dismissed with prejudice all claims against nine defendants.  DE #131 (5/1/2024).  Plaintiff also withdrew her allegations that Chris McNerney interfered with her job application to WCPD.  *Id.*  After Defendants filed their motion for summary judgment, Plaintiff further voluntarily dismissed all claims against defendants Frank Kozakiewicz and Dyana Albano.  DE #141.

3

In a March 25, 2025 Opinion and Order ("March 25th Order") on Defendants' motion for summary judgment, this Court dismissed all claims against defendants Jeff Cerone (including claims based on the January 19, 2019 incident and investigation) and Brian Matthews (retaliation claims based on the investigation of plaintiff's unauthorized break on April 16, 2021). DE #155 at pp.29, 31. This Court also dismissed the Third (Hostile Work Environment under Title VII), Fifth (Gender and Sexual Orientation Discrimination under 42 U.S.C. § 1983), Sixth (Sexual Harassment Against All Individual Defendants under § 1983), Eighth (Hostile Work Environment under § 1983), Tenth (Violation of Equal Protection and Due Process Against All Defendants under § 1983), Eleventh (Monell Violation Under § 1983), and Fourteenth (Retaliation under NYSHRL § 297) claims in their entirety. DE #155 at p.31.

The Court partially granted Defendants' motion for summary judgment on the retaliation claims as to numerous alleged adverse actions including: Plaintiff allegedly being assigned more frequently to 6-post, the investigations and Letter of Supervisory notice arising from Plaintiff's unauthorized break on April 16, 2021, Plaintiff's brother not being selected for the SWAT team, the Town's alleged failure to timely file paperwork regarding Plaintiff's July 2021 worker's comp claim, and the GPD's alleged refusal to place Plaintiff on restricted duty in July 2021. DE #155 at 16 n.9, 18, 20, 22-24. In the March 25th Order, this Court held that the only alleged retaliatory actions remaining for trial under Title VII (4th Count) and Section 1983 (7th Count)[2] are: (1)

---

[2] As noted in the JPTO, Plaintiff's Ninth Cause of action for "Unfair Discipline" under Section 1983 against Kobie Powell and Frank Farina is now wholly duplicative of Plaintiff's Seventh Cause of Action for "Retaliation" under Section 1983 as both claims are asserted solely against Powell and Farina based on violation of the Equal Protection Clause based on the same alleged "adverse actions." *See Julian v. New York City Transit Auth.*, 857 F. Supp. 242, 249 (E.D.N.Y. 1994) ("Section 1983 does not, in itself, create substantive rights; in order to prevail, a plaintiff must demonstrate a violation of an independent federal constitutional or statutory right."). The only remaining alleged "discipline" at issue are the Letters of Supervisory Notice issued to Stein after the MVA and Commendation Requests investigations, which the Court has identified

4

Plaintiff's treatment on the midnight shift, including co-workers ignoring her or delaying in providing her back-up; (2) the investigation of Plaintiff's October 5, 2020 MVA and resulting Letter of Supervisory Notice; and (3) the investigation of Plaintiff's April 2021 commendation requests and the resulting Letter of Supervisory Notice.  DE #155 at 25, 31.

## ARGUMENT

### I.    Legal Standard

"The purpose of an in limine motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy  argument at, or interruption of, the trial.'"  *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *see also Luce v. U.S.*, 469 U.S. 38, 40 n. 2, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984).  The scope of admissible evidence is governed first by the claims in the case and then by the concept of relevancy.  *See U.S. v. Litvak*, 808 F.3d 160, 179-180 (2d Cir. 2015); *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011).  "Irrelevant evidence is not admissible."  FRE 402.  Additionally, "[r]elevant evidence may still be excluded by the Court 'if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'"  *Jackson v. City of White Plains*, 2016 U.S. Dist. LEXIS 6469, at *3 (S.D.N.Y. Jan. 19, 2016) (quoting FRE 403).  The district court has "broad discretion to balance probative value against possible prejudice" under Rule 403.  *U.S. v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

---

as among the three remaining "adverse actions" for trial under the retaliation causes of action.  DE #155 at 26.  Plaintiff's proposed jury instructions do not identify separate elements of her Seventh and Ninth claims; they are the same claim wearing different titles.  Accordingly, the Ninth Cause of Action is wholly duplicative and should be dismissed.

## II.    Evidence Relating to Plaintiff's Dismissed Claims of Hostile Work Environment, Discrimination/Harassment, and Retaliation Are Irrelevant to the Remaining Claims and Overly Prejudicial To Defendants

Where claims have been dismissed on summary judgment, evidence and testimony regarding the dismissed claims generally should be precluded during a jury trial.  *See Abrams v. Dept of Public Safety*, 764 F.3d 244, 257 (2d Cir. 2012) ("The district court's decision to exclude the underlying evidence in support of Abrams's already-dismissed race discrimination claims, where the trial was to be held on a single retaliation claim, was not error."); *Hannah v. Wal-Mart Stores, Inc.*, 2017 U.S. Dist. LEXIS 23681, at *5-6 (D. Conn. Feb. 21, 2017) (evidence regarding dismissed retaliatory termination claim "would be irrelevant and unnecessary, and any potential probative value is substantially outweighed by the risk of unfair prejudice, confusion and delay") *aff'd Hannah v. Walmart Stores, Inc.,* 803 F. App'x 417, 422 (2d Cir. Feb. 3, 2020); *Benzinger v. Lukoil Pan Ams., LLC*, 2021 U.S. Dist. LEXIS 23597, *15 (S.D.N.Y. Feb. 8, 2021) ("reference before the jury to Benzinger's dismissed claims would risk causing substantial confusion as to the issues to be tried"); *Morales v. N.Y. Dep't of Labor*, 2012 U.S. Dist. LEXIS 92075, at *9-10 (N.D.N.Y. July 3, 2012) (rejecting plaintiff's argument that evidence regarding the dismissed claims should be admitted as "background evidence").

Moreover, expert opinions which concern dismissed claims should be precluded as they are not "helpful" to the trier of fact under Rule 702.  *See Krys v. Sugrue*, 2012 U.S. Dist. LEXIS 185904, *41-51 (S.D.N.Y. Apr. 9, 2012).  As explained by the court in *Krys*:

> To be admissible under Fed. R. Evid. 702, an expert's testimony must "fit" the facts of the case. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 591, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). "Fit" is an aspect of relevance, and it means that an expert's testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id*. To the extent the experts here are opining about the merits of dismissed claims, they fail the *Daubert* "fit" requirement for the simple reason that those merits have already been determined and are no longer relevant to the proceedings.

6

*Krys*, 2012 U.S. Dist. LEXIS 185904, at *41-42; *Lichtenstein v. Triarc Companies, Inc.*, 2004 U.S. Dist. LEXIS 8610, 2004 WL 1087263, at *13 (S.D.N.Y. 2004) (where pay disparity claim was dismissed, testimony from expert who measured pay disparity was "no longer relevant to any claim remaining in the case").

This Court's prior orders substantially narrowed the claims and issues remaining for trial. Specifically, 14 of 17 original defendants have been dismissed, and 11 of 14 causes of action were dismissed in their entirety. Of the three remaining causes of action for retaliation, many of the alleged retaliatory adverse actions have been dismissed, leaving three discrete alleged adverse actions for trial: (i) the alleged delayed back-up in 2019 on the midnight shift, (ii) the investigation and Letter of Supervisory Notice regarding Plaintiff's October 5, 2020 MVA, and (iii) the investigation and Letter of Supervisory Notice regarding Plaintiff's April 2021 commendation requests.

It is clear, however, from Plaintiff's proposed trial exhibit list and witness list, that Plaintiff intends to present all of her dismissed claims at trial and has wholly ignored the prior orders dismissing the entirety of her hostile work environment and discrimination claims, and substantial portions of her retaliation claims. The evidence Plaintiff proposes to present regarding the dismissed claims is either irrelevant to the remaining claims, or any potential relevance is outweighed by prejudice and confusion under Rule 403.

The elements of Plaintiff's remaining retaliation claims are (1) Plaintiff engaged in protected conduct, (2) Defendants were aware of the protected conduct, (3) the Town (under Title VII) and Kobie Powell and Frank Farina (under § 1983) took adverse action against Plaintiff; and (4) the adverse action was caused by Plaintiff's protected conduct. In the trial of a retaliation claim, evidence concerning the merits of the plaintiff's underlying complaint is generally not

relevant.  *See Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 609 (2d Cir. 2006) ("The relevant inquiry for Schiano's retaliation claim must focus on the retaliation she suffered for complaining about the harassment, not on the initial harassment itself.").

The first two elements of Plaintiff's claim are not in dispute.  Defendants acknowledge that they were aware that Plaintiff had engaged in protected conduct and proposed a stipulation of fact regarding these elements, which Plaintiff opposes.  *See* JPTO at Addendum A.  Evidence and testimony regarding Plaintiff's dismissed claims has no relevance to the third and fourth elements of Plaintiff's claims, *i.e.*, whether the Defendants' alleged actions constitute "adverse employment actions" and whether the actions were caused by Plaintiff's protected activity.  Accordingly, this Court should preclude all evidence concerning the dismissed claims, including those categories of evidence listed below.

### A. Evidence Regarding PO Kozakiewicz and PO Cerone (Including Plaintiffs' Proposed Exhibits P-9 through P-11, P-13 through P-15, P-20 through P-25)

Defendants moved for summary judgment on all claims related to PO Kozakiewicz. Instead of opposing the motion, Plaintiff dismissed the claims with prejudice.  *See*  DE #143, DE #155 at 2 n.2, 31-32.  PO Kozakiewicz did not work on the midnight tour in 2019 nor was he involved in the investigation of Plaintiff's MVA or commendation requests.  Accordingly, any evidence regarding conduct of PO Kozakiewicz, and GPD's interview of Kozakiewicz in response to Plaintiff's 2020 EEOC Charge, are not relevant to any of the remaining retaliation claims and would only result in undue prejudice, confusion, and waste of time.  Evidence regarding PO Kozakiewicz should be excluded.

In the March 25, 2025 Order, this Court dismissed Plaintiff's claims based on the conduct of PO Cerone, holding that Plaintiff's Title VII claims based on the January 19, 2019 incident were

time barred, and that PO Cerone's conduct was not state action under Section 1983.  DE #155 at p.10-13.[3]

Plaintiff's proposed exhibits regarding the alleged inappropriate text messages by PO Cerone in 2018, the January 19, 2019 incident between Plaintiff and Cerone, and the SIU investigation file of the January 19, 2019 incident are all irrelevant to the remaining retaliation claims.  Moreover, Plaintiff's proposed exhibits P-9 and P-10 (body camera recordings from January 19, 2019), are also irrelevant to liability on the remaining retaliation claims.  Admitting evidence regarding the January 19, 2019 claim would be overly prejudicial to Defendants, confusing to the jury, and would result in a trial within a trial of dismissed claims as Defendants would need to present their arguments that Plaintiff never reported that she was "sexually" assaulted by Cerone, the Town's response was reasonable, and Plaintiff's conduct was unreasonable in failing to disclose the bodycam videos.

To the extent Plaintiff contends the January 19, 2019 incident is relevant to provide background regarding her protected conduct, Defendants proposed a stipulation on this issue which Plaintiff rejected.  *See* JPTO at Addendum A.

## B.  The Substance of Plaintiff's EEOC Complaints and SIU Investigation 20-040 (P-19 through P-25, P-85)

Plaintiff's August 2020 EEOC Charge primarily concerns allegations that Plaintiff was harassed by PO Kozakiewicz in 2017 and subsequently by PO Cerone on January 19, 2019.  The claims based on those allegations were dismissed.  The EEOC Charge contains just two paragraphs mentioning the alleged lack of back-up.  SIU investigation 20-040, which was undertaken in conjunction with outside counsel in response to the EEOC Charge and involved SIU interviews of

---

[3] The Court dismissed the claims without reaching Defendants' *Faragher/Ellerth* affirmative defense.

9

individuals who have been dismissed from this case, has no relevance to the remaining retaliation claims. Plaintiff's specific allegations that she was sexually harassed by Kozakiewicz and Cerone and that the Town failed to properly respond to the alleged harassment, were disputed by Defendants and dismissed from the case. Permitting Plaintiff to introduce such evidence would serve only to unfairly prejudice Defendants and confuse the jury and would needlessly complicate and lengthen the trial. *See Peck v. County of Onondaga*, 2025 U.S. Dist. LEXIS 15193, *14 (N.D.N.Y. 2025) (excluding DHR complaint and EEOC complaint); *Richmond v. General Nutrition Ctrs., Inc.*, 2012 U.S. Dist. LEXIS 32070, *31 (S.D.N.Y. 2012) (precluding pleadings and court filings as prejudicial hearsay).

### C. Evidence regarding Other Alleged Retaliation, including SIU Investigations 21-009 and 21-010, Alleged Interference with Job Applications, Plaintiff's Worker's Comp Application, Restricted Duty Request, and Issues Investigated Separately by the Town (P-17, P-18, P-48 through P-56, P-71 through P-71)[4]

Despite this Court's express holding that only three alleged retaliatory actions remained for trial, Plaintiff attempts to present evidence of all the alleged bases for her retaliatory claims including:

- the entire SIU files and related Letter of Supervisory Notice for SIU 21-009 and 21-010 arising from Plaintiff's unauthorized absence on April 16, 2021[5];

- Plaintiff's workers comp claim;

- Plaintiff's request for restricted duty

---

[4] There appears to be a numbering error at Plaintiff's Exhibit List p.8, what should be P-73. Defendants object to the 4 exhibits beginning with the first P-71 "Text messages," "Stein written retaliation complaint," "Taglia Letter," and "Letter of Supervisory Notice" for 21-009 and 21-010 which were dismissed.

[5] Additionally, documents containing references to the dismissed claims should be redacted, e.g. P-73, written by Plaintiff, includes several paragraphs about Lt. Matthews and Plaintiff's unauthorized April 16, 2021 break.

10

- The numerous allegations of retaliation investigated separately by the Town

Evidence regarding these issues is not relevant to the remaining retaliation claims.  Even if they were marginally relevant, any evidence regarding these dismissed claims would be outweighed by prejudice to the remaining defendants, jury confusion, and waste of time and a violation of law of the case given the Court's prior rulings.

Finally, Plaintiff voluntarily dismissed her claim alleging that Chris McNerney interfered with her job application to Westchester County after it was revealed during discovery that Plaintiff's allegations were based exclusively on a second-hand report of an unattributed rumor overheard in a bar.  *See* DE #130, Ex. E (Mostrando Dep.) at 23:7-24:14; Ex. F (Stein Dep.) at 343:6-346:18, 347:7-349:14, 350:22-351:5 (no evidence, just a "gut feeling").  Plaintiff's unsupported allegations of job interference are irrelevant to her remaining retaliation claims and are overly prejudicial to the remaining Defendants, confusing, and a complete waste of time.

### D.  Testimony from David Zenon.

Plaintiff proffers David Zenon to testify regarding his experience as a GPD officer, Stein's work performance and experience with co-workers, and her mental health.  DE #158 (JPTO) at 6-7.  Defendants move to preclude Zenon as a witness.  *See Martin v. Reno*, 2000 U.S. Dist. LEXIS 18278, *8 (S.D.N.Y. Dec. 18, 2000) (precluding testimony from co-workers who had "no personal knowledge of discriminatory acts by the [employer] against [plaintiff]").  At his deposition, Zenon denied having any first-hand knowledge that would be relevant to any remaining claims in the case.  *See* Ex. G (Zenon Dep.) at 31-32 (no firsthand knowledge of officers failing to backup Stein); 41 (did not know whether any officer ever failed to backup Stein); 43 (could not identify any officer who told him not to trust Plaintiff); 120 (did not work midnights and rarely worked the same tour as Stein in 2019).  Zenon did not witness Stein's MVA, serve on the 2021

11

Commendations Board, or work in SIU.  Finally, Zenon's proposed testimony regarding Plaintiff's mental health would be cumulative of the *eight* other witnesses Plaintiff identifies for this topic. *See* DE #158.

### E.  Damages Evidence Related to Dismissed Claims

#### 1.  All Evidence of Economic Damages Should Be Precluded

Plaintiff was never terminated.  In July 2021, claiming gastrointestinal and mental health injuries due to the January 19, 2019 incident, Plaintiff asserted she could no longer perform her job duties and went out on leave.  Ex. H (TOG-001768-1776), TOG-001782-1784 (citing January 19, 2019 incident as basis for, *inter alia*, PTSD and other injuries).  To the extent Plaintiff made a claim of constructive discharge based on denial of restricted duty, that claim was dismissed in the March 25, 2025 Order.  Accordingly, Plaintiff should be precluded from seeking any economic damages and her damages expert, Michael Ramer, should be precluded from testifying.  *See Krys*, 2012 U.S. Dist. LEXIS 185904, *41-51.

A "plaintiff is not entitled to economic damages in the absence of a constructive discharge." *Tulino v. Ali*, 2019 U.S. Dist. LEXIS 46264 (S.D.N.Y. Feb. 27, 2019) (refusing to instruct jury on economic damages where court dismissed constructive discharge claim) *aff'd* 813 Fed. Appx. 725 (2d Cir. 2020); *see also Todaro v. Siegel Fenchel & Peddy*, 2008 U.S. Dist. LEXIS 140811, *18 (E.D.N.Y. Aug. 11, 2008) (holding that "front pay and back pay are not available as damages to plaintiffs who cannot establish that they were constructively discharged" and granting motion to preclude all evidence regarding back pay or front pay following resignation); *Facci-Brahler v. Montgomery Cnty.*, 2025 U.S. Dist. LEXIS 41159, *15-16 (N.D.N.Y. Mar. 7, 2025) (plaintiff not permitted to recover lost earnings where she had no constructive discharge claim).

To the extent Plaintiff claims her PTSD precluded her from working, there is no evidence from which a jury could find that the three remaining incidents caused PTSD[6] (see infra at II.E.2) and no evidence from which a jury could find that the remaining three alleged retaliatory actions constituted constructive discharge of Plaintiff in July 2021.  *See Tulino*, 2019 U.S. Dist. LEXIS 46264, *9-10.

Plaintiff's damages expert, Ramer, opines as to amounts of lost compensation (back pay plus front pay, including employment and retirement benefits value) "which she would have earned had she remained as a police officer through her career and received in retirement."  Ex. C (Ramer Report) at 22.[7]  Given that these all claims associated an alleged inability to continue working have been dismissed, any evidence regarding lost compensation is irrelevant and should be precluded.[8]

---

[6] Pursuant to the DSM-5, the first prerequisite for PTSD is "exposure to actual or threatened death, serious injury, or sexual violence." *See* https://www.ncbi.nlm.nih.gov/books/NBK207191/box/part1_ch3.box16/.  Defendants dispute that Plaintiff has ever been exposed to an incident which would qualify as a qualifying traumatic event as part of her employment at GPD; but the only event that Plaintiff ever alleged supported her PTSD diagnosis is the January 19, 2019 incident.

[7] Ramer opined that it is unknown when, if ever, Plaintiff will be capable of returning to work, and thus provided entirely speculative lost earnings calculations based on various scenarios in which Plaintiff returned to work in 2032, 2039, or never.  Ex. C (Ramer) at 23.

[8] Indeed, in identifying the materials considered to arrive at his expert opinions, while Ramer reviewed materials associated with the January 19, 2019 incident and Plaintiff's application for workers compensation, he did not review any material from the SIU files regarding Plaintiff's complaint of a lack of backup in 2019, her 2020 MVA, or her commendation requests.  Ex. C (Ramer) at pp. 2-3 ¶¶7-8.  As such, Ramer's own report established the lack of relevance of his testimony to the remaining claims.

13

**2. All Evidence of Plaintiff's Emotional Distress Allegedly Caused by the Dismissed Claims Should Be Precluded (Including Plaintiff's PTSD, Depression, Anxiety Diagnoses and Her Expert Dr. Siegert) Alternatively, the Liability and Damages Phases of the Case Should Be Bifurcated**

The Court should preclude any testimony that Ms. Stein has been diagnosed with PTSD, Depression, or Anxiety as a result of treatment at GPD as her treating mental health providers and her psychological expert attribute these conditions to her treatment by Kozakiewicz and the January 2019 incident with Cerone, not to the remaining incidents at issue in this case.[9]

Instead, Ms. Stein's first therapist, Reyes-Levine, wrote an August 2020 report, prior to the MVA investigation or the Commendation investigation, diagnosing Ms. Stein with anxiety and PTSD, the symptoms of which allegedly began in 2017 due to the conduct of Kozakiewicz and culminating in the January 19, 2019 Cerone incident, which Reyes-Levine described as "the most profound Trauma." Ex. I (Stein001416-1422).

Plaintiff's psychological expert, Dr. Siegert, reviewed Plaintiff's medical records, including those of Ms. Reyes-Levine, noting that Ms. Stein had been diagnosed with PTSD due to the January 19, 2019 incident and that subsequent medical records focused on the January 19, 2019 incident. Ex. D (Siegert Rep.) at p.4 at ¶3, p.12-21. He then diagnosed Plaintiff with (1) Severe PTSD, (2) Severe Major Depressive Disorder with Anxious Distress, (3) Severe Persistent Depressive Disorder (Dysthymia), and (4) Generalized Anxiety Disorder "caused by the events which occurred at the GPD. Her suffering started with sexual harassment by Kozakiewicz coupled with sexual harassment and an assault by Cerone. It was further exacerbated by the way the department handled the event." Ex. D (Siegert Rep.) at 48. Dr. Siegert further opines that it is

---

[9] While there is passing mention of Plaintiff's allegation that other officers failed to back her up in the provider notes; none of her providers attributed any of her alleged emotional distress to the 2020 MVA investigation or the 2021 commendation requests investigation.

impossible to conclude "to a reasonable degree of psychological certainty, whether or when Ms. Stein will ever be able to hold down a full-time job again." *Id*. at 51.  At no point does Dr. Siegert opine that the 2020 MVA investigation and July 2021 commendation requests investigation or the Letters of Supervisory Notice contributed to Ms. Stein's emotional distress. *Id*. at 48-51.  Thus, Dr. Siegert's testimony is irrelevant to the remaining claims and he should be precluded from testifying.[10]

Permitting evidence regarding Plaintiff's purported diagnosis of severe psychological conditions which are attributable to claims that have been dismissed from the case would be highly prejudicial to Defendants, confusing to the jury, and wasteful of the court's time.  There is simply no evidence that the alleged SIU investigations or counselling letters caused Plaintiff any emotional distress, nor is there any evidence that the three incidents remaining in the case—the Defendants' response to alleged delayed back-up in 2019, the 2020 MVA Investigation and Letter of Supervisory Notice, and the April 2021 Commendation Requests Investigation and Letter of Supervisory Notice—caused debilitating PTSD, Depression, and Anxiety.  Admitting evidence of these diagnoses where there is no evidence that they have any relationship to the remaining claims would substantially prejudice Defendants and result in numerous trials within the trial as Defendants are forced to litigate not only the diagnoses but the alleged underlying conduct that Plaintiff claims caused these conditions.  Accordingly, Plaintiff should be precluded from presenting any evidence of the emotional distress caused by the dismissed claims, including her

---

[10] While Dr. Siegert opines that the alleged back-up issue was one factor (among many) that allegedly contributed to Plaintiff becoming suicidal and turning in her gun, Ex. D at 48-49 at ¶1, the alleged delayed back-up occurred in 2019, over a year and half before Plaintiff turned in her gun.  Ex. F at 323:23-324:5, 327:5-19 (no alleged issues with back-up after Jan 2020). Moreover, Plaintiff did not cite the 2019 delayed back-up as a basis for her decision.  Ex. H.

PTSD, Depression, and Anxiety diagnoses, or evidence attributing these conditions to her employment at GPD.

In the alternative, this Court should bifurcate the liability and damages phases of the case.[11]

Rule 42(b) of the Federal Rules of Civil Procedure affords a trial court the discretion to order separate trials where such an order will further convenience, avoid prejudice,   or promote efficiency. … Therefore, bifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue, … or where one party will be prejudiced by evidence presented against another party[.]

*Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999) (internal citations omitted); *see e.g.*, *Schlant v. Victor Belata Belting Co.*, 2001 U.S. Dist. LEXIS 16539, *2 (W.D.N.Y. Oct. 2, 2001) (liability and damages bifurcated in Title VII discrimination case).  Here, the purposes of Rule 42 favor bifurcation of the liability and damages phases.  First, if the Defendants are successful in the liability phase it will eliminate the need to litigate damages, which would promote efficiency as 9 of Plaintiff's 15 proposed witnesses are relevant only to damages and Defendants will need to introduce additional rebuttal evidence if Plaintiff is to be permitted to essentially try the dismissed claims.  *See* JPTO at 6-10.  Second, bifurcation would reduce the potential prejudice to Defendants from the introduction of evidence regarding Plaintiff's allegedly severe emotional distress arising from disputed events.

### 3. All Evidence Regarding Plaintiff's Gastrointestinal Issues, Which Were Attributed to the January 19, 2019 Incident, Should Be Excluded

Plaintiff's proposed exhibit list includes medical records of Drs. Caldwell, Ehrlich and Tarlowe (P-91 through P-93).  Exhibit P-91 concerns Plaintiff's treatment for anemia in November 2020; there is no evidence connecting Plaintiff's anemia with any alleged retaliatory conduct.

---

[11] Even with bifurcation, Plaintiff should be precluded from presenting evidence that she has PTSD, Major Depressive Disorder, or Generalized Anxiety due to the remaining claims given that the diagnoses were attributed to the January 19, 2019 incident and to the action of Kozakiewicz in 2017.

Exhibits P-92 and P-93 concern Plaintiff's treatment for gastrointestinal issues including IBS. The records include a July 9, 2021 letter, which asserts that "Since 1/19/2019, Kristin has complained of severe gastrointestinal issues. Her ailments developed since Kristin experienced a traumatic work-related incident[.]" P-92 at Stein001808.

First, Plaintiff attributed her gastrointestinal issues to the January 19, 2019 Cerone incident, which has been dismissed from the case.[12]

Second, there is no medical evidence regarding causation in the records, and Plaintiff does not identify any of these physicians Dr. Caldwell, Dr. Ehrlich, or Dr. Tarlowe on her witness list. Accordingly, Plaintiff may not testify that she has gastrointestinal conditions due to the remaining claims in this case. *See Kokoska v. City of Hartford*, 2014 U.S. Dist. LEXIS 133262 (D. Conn. Sept, 23, 2014) ("In the absence of expert testimony or medical records, Plaintiff may not testify that [s]he suffers from a particular psychological diagnosis or that such psychological condition is causally related to the events giving rise to this claim.").

**F. Post-June 15, 2021 Evidence, including Plaintiff's July 2021 Workers Compensation Application and Request for Restricted Duty (P-7[sic] Taglia Letter dated 8/30/2021, P-74 (Fed Compl.) P-75 AOS, P-76 through P-86 (workers comp file)).**

The last alleged retaliatory action at issue is the June 15, 2021 Letter of Supervisory Notice regarding Plaintiff's commendation requests. Any evidence post-dating the June 15, 2021 Letter is not relevant to liability on any remaining issue in this case. Even if it were relevant for Plaintiff to testify that she left active duty in July 2021, the voluminous post June 15 2021 exhibits on

---

[12] It is not clear from the records whether any of the treating physicians independently attempted to determine a cause for Plaintiff's gastrointestinal symptoms or whether the records merely repeat what Plaintiff told them – that the symptoms were due to the Cerone incident. *See generally*, *Bradshaw v. Fletcher*, 2024 U.S. Dist. LEXIS 6440 (N.D.N.Y. Jan. 12, 2024) (medical records "diagnosis" of "sexual abuse" precluded where it was unclear whether diagnosis was based on physician's independent evaluation or plaintiff's reports alone).

17

Plaintiff's exhibit list ignore that Defendants were granted summary judgment on Plaintiff's allegations of a retaliatory denial of restricted duty or delay in processing her workers' compensation claim in July 2021.

Plaintiff's Notice of Claim and Second EEOC Charge (filed in September 2021) and her federal complaints (first filed in July 2021), after all of the alleged retaliatory events at issue in the case, constitute irrelevant and prejudicial hearsay (P-74, P-83, P-84, and P-85).

All exhibits on Plaintiff's Proposed Exhibit List post-dating June 15, 2021 are irrelevant and should be precluded.

## III.    Evidence of Unrelated Complaints of Hostile Work Environment or Harassment Are Irrelevant and Should Be Excluded

Allegations, complaints, and investigations regarding sexual harassment, discrimination, and/or retaliation at GPD which do not involve Plaintiff or the remaining individual defendants in this action are not relevant and should be excluded from trial.  To the extent any other instance of alleged misconduct is potentially relevant to Plaintiff's case, any minimal relevance would be substantially outweighed by the risk of unfair prejudice to Defendants and jury confusion.  This category of evidence would include the 2020 complaint by PO Keith that a lieutenant was harassing her; the October 2021 complaint made by PO Albano regarding Sgt. Olson (Pl. Proposed Ex. P-8); and any internal workplace investigations conducted by the Town after Plaintiff filed her lawsuit and left active duty in July 2021.

Evidence regarding alleged harassment or mistreatment of other employees that were not directly involved in alleged misconduct towards the plaintiff, are not relevant and should be precluded under Rules 402 and 403.  *See Coudert v. Janney Montgomery Scott, LLC*, 2004 U.S. Dist. LEXIS 21135, at *9 (D. Conn. Oct. 7, 2004) (collecting cases).

Finally, after Plaintiff went on leave in July 2021, the Town Supervisor announced the Town's intention to hire an outside law firm to investigate allegations of sexual harassment at GPD. Plaintiff's counsel used documents regarding this subsequent investigation as deposition exhibits including a Town resolution authorizing retention of an outside firm in 2022. *See* (Plaintiffs depositions exhibits 182-183). Any reference to subsequent investigations regarding other officers at GPD would be irrelevant and prejudicial to Defendants. FRE 402, 403, 407. Plaintiff was not working at GPD at the time, and the announcement of such investigation is not probative of the remaining issues; rather, evidence regarding any unrelated investigations would result in undue prejudice and jury confusion as the Defendants would be compelled to present evidence of their investigations, findings, and actions regarding those matters.

## IV. Plaintiff's Expert Joseph Pollini Should Be Precluded from Testifying

Plaintiff's proposed expert should be precluded from testifying as his proffered testimony does not meet the requirements of FRE 702.

Under Rule 702, the Court must determine whether a proposed expert's testimony passes muster on three bases: 1) whether the witness is qualified as an expert; 2) whether the opinion is based upon reliable data and methodology; and 3) whether the expert's testimony on a particular issue will assist the trier of fact. *See Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005). The Court must "make certain than an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). In determining whether an expert's analysis is unreliable, "the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and

19

methods to the case at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate exclusion of that unreliable opinion testimony." *Id.* at 266.

In addition, expert testimony should be excluded if it is "speculative or conjectural," if it is "based on assumptions that are so unrealistic and contradictory as to suggest bad faith," or to be "in essence an apples to oranges comparison." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996). "Admission of expert testimony based on speculative assumptions is an abuse of discretion." *Id.* at 22. The party proffering the expert testimony has the burden of establishing that it complies with Rule 702. *See Bee v. Novartis Pharm. Corp.*, 18 F.Supp.3d 268, 300, 301 (E.D.N.Y. 2014).

Plaintiff proffered Pollini to opine that other officers present during the January 19, 2019 incident between Plaintiff and PO Cerone did not corroborate Plaintiff's recent version of events because they were affected by "the Blue Wall of Silence," Ex. A (Pollini Report) at 54, and that the investigation of the January 19, 2019 incident was inadequate, *id* at 54-57. Pollini also offers many improper assertions regurgitation Plaintiff's arguments and making various "concluding opinions" consisting of prejudicial statements about corruption being endemic to police culture. *Id*. at 64-66.

### 1.    Pollini Should Be Precluded From Testifying About the "Blue Wall of Silence"

Pollini's proposed testimony regarding the "Blue Wall of Silence" is irrelevant, inadmissible, prejudicial, and is not the result of the application of reliable principles to sufficient facts regarding this case. Courts repeatedly have precluded plaintiffs from referring to terms such as the "Blue Wall of Silence" in cases involving police officer defendants as irrelevant and

inadmissible. *See Woolfolk v. Baldofsky*, 2022 U.S. Dist. LEXIS 120838, at \*13-14 (E.D.N.Y. July 8, 2022); *Hill v. City of New York*, 2007 U.S. Dist. LEXIS 48641 (E.D.N.Y. July 5, 2007); *Williams v. Boley*, 2023 U.S. Dist. LEXIS 114757, at \*31 (S.D. Ind. July 5, 2023); *see also Domenech v. City of New York*, 919 F. supp. 702, 711 (S.D.N.Y. 1996) (Mollen Commission report not probative since plaintiff alleged retaliation after reporting sexual harassment, *i.e.*, conduct unrelated to corruption).

As an initial matter, Pollini's opinions about the Blue Wall of Silence must be excluded as they concern claims that have already been dismissed. *See Krys*, 2012 U.S. Dist. LEXIS 185904 at \*41-42 (collecting cases). Pollini's opinions primarily concern the dismissed claims and are thus no longer a "fit" for the issues to be tried. *See id;* Ex. A (Pollini Report), pp. 5-14, 53-57 (1/19/2019 Roll Call Incident), pp. 24-33, 59-61 (SIU 009 unauthorized break), pp. 33-35 (SIU 010), pp. 43-53, 63-64 (unrelated Albano/Olsen complaint). As such, Pollini's opinions related to Plaintiff's dismissed hostile work environment, discrimination, and retaliation claims must be excluded as not "helpful" to the trier of fact. *Krys*, 2012 U.S. Dist. LEXIS 185904 at \*41-42

Second, Pollini's assertions about the "Blue Wall of Silence" must be excluded because Pollini is not qualified to opine on the presence of the "Blue Wall of Silence" in 2019, and his opinions are not based on sufficient facts, data about this case or reliable methodology.

Pollini has never been deemed an expert witness on the "Blue Wall of Silence," nor has he conducted any research regarding the issue; he was unable to identify the materials he has read regarding this concept. *See* Ex. B at 257:3-258:21. While Pollini asserted that he was "involved" with the Knapp Commission (Commission to Investigate Alleged Police Corruption) and Mollen Commission (The City of New York Commission to Investigate Allegations of Police Corruption and Anti-Corruption Procedure of the Police Department) which existed in 1970 and 1994,

respectively, he subsequently conceded that he had no role in the Knapp or Mollen investigations, and did not identify any further studies of the "Blue Wall" phenomenon in the intervening decades. Ex. B at 102:5-105:2. Pollini testified that, when he was a lieutenant with NYPD he never considered whether his own unit was affected by the Blue Wall or Silence and never took any steps to combat it. Ex. B (Pollini Dep.) at 102:6-105:2, 107:12-110:23 ("I never got myself to the point of being involved with it.").

Pollini never interviewed any GPD officers and never conducted any research to determine whether GPD was affected by the "Blue Wall of Silence"; he could not say whether all police departments are affected by the "Blue Wall of Silence" or whether some may not be, and he could not articulate how one would test to determine whether a particular unit or investigation was affected by the "Blue Wall of Silence." *See* Ex. B at 105:3-110:2, 259:13-260:1. Pollini never reviewed the Town's anti-retaliation policies or assessed whether they were effective, though he acknowledged such policies could be relevant to mitigating any effects of the "Blue Wall of Silence." *See* Ex. B at 262:22-263:24.

Pollini does not identify any facts and data, and offers no reliable methodology, warranting an expert opinion that the "Blue Wall of Silence" exists within GPD or that the "concept" affected any of Plaintiff's remaining claims. As such, any testimony regarding the "Blue Wall of Silence" is purely speculative and must be excluded. *See Maldonado v. Town of Greenburgh*, 2024 U.S. Dist. LEXIS 175235, at *30 (S.D.N.Y. Sept. 26, 2024); *Est. of Jaquez v. City of New York*, 104 F. Supp. 3d 414, 427, 431 (S.D.N.Y. 2015) (expert "advance[d] no methodology to support his conclusions").

**2. Pollini's Opinions on Plaintiff's Remaining Claims are Irrelevant, Do Not Employ Reliable Methodologies, and Will Not Assist the Trier of Fact.**

Pollini should be excluded as he offers no conclusions based on expert knowledge that would assist a trier of fact and employs no reliable methodology for his purported opinions. Instead, Pollini speculates as to individual witness's motivations, regurgitates Plaintiff's position, and admits to making credibility determinations rendering his opinions inadmissible. *See* Ex. B at 297:11-298:4; *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 424-25 ("[a]n expert who simply regurgitates what a party has told him provides no assistance to the trier of fact through the application of specialized knowledge.") (collecting cases); *Barban v. Rheem Textile Sys.*, 147 F. App'x 222 (2d Cir. 2005) (Where proposed expert lacked knowledge about many of the assumptions underlying his conclusions, had not performed the types of studies that could have buttressed his insufficient knowledge base, and made assumptions that were conclusory or irrelevant, trial court properly excluded expert's testimony under FRE 702).

With respect to Plaintiff's claim that other officers retaliated against her by failing to promptly back her up, Pollini testified that he was not criticizing how GPD addressed the situation, rather he disagreed with the conclusion that on the one instance in which PO Tiedemann did not immediately backup Plaintiff there was no malice towards Plaintiff, and that instead, PO Tiedemann's actions must have been motivated by the "Blue Wall of Silence." *See* Ex. B at 198:6-201:6, 204:22-205:3. Pollini acknowledged that he had no basis for this conclusion. *Id.* at 201:7-21 ("Like I said, I can't say for certain, it's a possibility it would be something conducive to a set up like that."). Notably, Pollini makes this determination without reviewing the 6-months' worth of call data reviewed by Lieutenant Powell and without any information from PO Tiedemann. *See* Ex. B at 204:22-205:7, 205:25-210:21 ("I'm not sure whether [Lt. Powell] did or did not look at the data. All I know he's in conflict *with what she said happened*.") (emphasis added). As Pollini

did not review the relevant data regarding the investigation, he has no basis to critique it. His conclusory recitation of Plaintiff's allegations and speculation that lack of back up could be intentional, is not an application of specialized expertise necessary to aid the triers of fact with an issue outside their understanding.

Regarding the SIU investigation of Plaintiff's MVA, Pollini repeats Plaintiff's assertion that she was not the cause of the accident, and that Farina's guidance that Plaintiff may have avoided the accident or incurred less injury had she not been speeding is "subjective." *See* Ex. A at 58-59. Notably, Pollini is not an accident reconstructionist, and thus has not basis to opine on the cause of the accident. Ex. B at 24:6-8.

Pollini also intends to opine that the MVA constituted selective enforcement, based solely on his comparison of Plaintiff's accident and the Brian Doherty accident which Pollini concedes, involved only minor damage.[13] Pollini's report and testimony shows that he did not review any other MVA investigations conducted by GPD and that he does not understand the concept of selective enforcement for purposes of an Equal Protection Claim. *See* Ex. B at 236:7-250:10. This Court already concluded that the Doherty MVA was not similar to Plaintiff's MVA, in which she was speeding and not responding to any call for service, and thus could not support a selective enforcement claim. DE #155 at 22 (Doherty MVA not similar, Tarone MVA could be similar); *see Raspardo v. Carlone*, 770 F.3d 97 (2d Cir. 2014) (as a matter of law, officer-involved accidents which occurred at low speed with minimal damage and injuries are not similar to accidents involving injury and property damage and cannot support an Equal Protection claim). Accordingly, any opinion from Pollini on this issue would not be based on the application of a

---

[13] Officer Doherty was not disciplined after striking the bumper of another vehicle while backing up his patrol car in the dark to respond to a burglary; there was only minor vehicle damage and no injuries. DE # 151-73 (Pl. SJ Ex. 73).

reliable methodology to sufficient facts, and would only confuse the jury and improperly invade upon the province of the jury.

Regarding the investigation of Plaintiff's Commendation Requests, Pollini's only opinion, – which employs no reliable methodology – is that Plaintiff's conduct during the two incidents was "commendatory." Ex. A Pollini Report, pp. 61-63; Ex. B at 292:10-17. Pollini does not refute the numerous inconsistencies identified between Plaintiff's commendation requests and the bodycam video which served as the basis for the SIU investigation; moreover, he agreed that officers have an obligation to be truthful and accurate in their requests and should be investigated if their commendation requests are not accurate. Ex. B (Pollini Dep.) at 287:10-21. Instead, Pollini offers only improper credibility assessments. *See, e.g.,* Ex. A at 61-63 ("I do not believe that leaving PO Braig's name out of the commendation request was an intentional misrepresentation."); Ex. B at 262:2-21 (intends to opine that Stein was subjected to a hostile work environment based solely on the roll call incident).[14] Pollini's credibility determination must be excluded. *See Nimely*, 414 F.3d 381, 397-99 (2d Cir. 2005) (citing cases).

Any testimony regarding Pollini's conclusory assertions regarding "promotion of corruption and misconduct," falsification of evidence, and police culture generally, Ex. A at 64-66, must be excluded as baseless and highly prejudicial. Ex. B at 260:3-261:25 (effectively conceding he had no evidence to support the assertions as applicable in this case). These outrageous assertions only confirm that Pollini did not apply a reliable methodology to sufficient data to arrive at opinions as to the facts of this case. *See Torain v. City of Philadelphia*, 2023 U.S.

---

[14] Pollini conceded that he believed Plaintiff's rendition of events and did not consider that Plaintiff might be exaggerating the facts. *See* Ex. B at 297:22-298:10. *See Arista Records LLC*, 608 F. Supp. 2d at 424-25 ("[a]n expert who simply regurgitates what a party has told him provides no assistance to the trier of fact through the application of specialized knowledge.").

Dist. LEXIS 5657, *11 (E.D.Pa. Jan. 12, 2023) (excluding Pollini testimony under *Daubert* for failure of fit and reliability tests).

Finally, expert testimony is not necessary for a jury to assess the evidence of the remaining issues in this case, *i.e*, whether the incidents were retaliatory adverse employment actions. The relevant evidence – dash camera footage, body camera footage, underlying police reports, and witness testimony – is within the province of the jury to understand. *See United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (expert testimony must not usurp the province of the jury to make factual determinations). Accordingly, Pollini should be precluded from testifying.

## V.    Evidence Regarding Unrelated Complaints Against the Defendants and Any Resulting Disciplinary History is Irrelevant and Overly Prejudicial

In response to Plaintiff's discovery requests, Defendants produced documents regarding their personnel and disciplinary history, including documents TOG-004065 through TOG-004111 (the "Farina Documents")[15] which concern an investigation into complaints against Captain Farina by former Lt. Gramaglia, alleging that Farina made statements to Gramaglia and a sergeant which were abusive, profane and physically threatening (including allegations the Farina did not respect precautions taken by Gramaglia during COVID 19). None of the allegations concerned Plaintiff. The Farina Documents should be precluded as they are irrelevant to Plaintiff's remaining retaliation claims. Even assuming *arguendo* that the Farina documents have some probative value, it is substantially outweighed by the danger of unfair prejudice.

The Farina Documents were originally produced only as potentially relevant to Plaintiff's hostile work environment claims, which were dismissed on March 25, 2025, DE# 155 at p. 31, making the evidence wholly irrelevant to the remaining claims. *See supra* Part II. Moreover, the

---

[15] Should the Court need to review the Farina Documents, Defendants request to submit them under seal.

Farina Documents do not involve Plaintiff in any way. *See Martin v. Reno*, 2000 U.S. Dist. LEXIS 18278, *10 (S.D.N.Y. Dec. 18, 2000) (precluding evidence regarding incidents of discrimination by employer that do not involve plaintiff as "irrelevant" and "too far afield" from plaintiff's claims). Nor is the conduct at issue in the Farina Documents similar to the alleged conduct in this case – Plaintiff does not allege that Farina swore at or threatened her, rather she alleges that Farina issued her Letters of Supervisory Notice as retaliation for protected complaints of discrimination.

The Farina Documents would also pose a substantial likelihood of confusing the issues, misleading the jury, and leading to "mini-trials" regarding each incident. *See Evans v. Port Auth.*, 2005 U.S. Dist. LEXIS 22049, at *7 (S.D.N.Y. Sep. 30, 2005) (evidence of retaliation against other employees excluded to prove causality on plaintiff's retaliation claim due to significant risk of confusing the issues and misleading the jury); *Manning v. N.Y. Univ.*, 2001 U.S. Dist. LEXIS 510, at *12 (S.D.N.Y. Jan. 24, 2001) (evidence of other employees alleged discrimination would "risk becoming 'mini-trials' on tangential issues. Thus, trial efficiency and the potential for prejudice weigh against the evidence's admission"); *Coudert v. Janney Montgomery Scott, LLC*, No. 3:03cv324 (MRK), 2004 U.S. Dist. LEXIS 21135, at *9 (D. Conn. Oct. 7, 2004) (excluding evidence of other employees harassment and discrimination claims); *Castro v. City of N.Y.*, 2010 U.S. Dist. LEXIS 155135, at *16 (S.D.N.Y. Aug. 5, 2010). The Farina Documents should be excluded.

## VI.    Plaintiff Should Be Precluded From Suggesting a Specific Sum for Non-Economic Damages and From Presenting Evidence that the Individual Defendants Will Be Indemnified

In the Second Circuit, "specifying target amounts for the jury to award is disfavored." *Bradshaw v. Fletcher*, 2024 U.S. Dist. LEXIS 6440 (N.D.N.Y. Jan. 12, 2024) (citation omitted) (rejecting plaintiff's request to inform jury of damages request of $25,000 for each incident); *see*

27

*also Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997) (ultimately it is in the trial court's discretion to "either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions").

Court frequently preclude any such reference as specifying target amounts of non-economic damages impermissibly "anchor[s] the jurors' expectations of a fair award at the place set by counsel, rather than by the evidence." *Ferreira v. City of Binghamton*, 2016 U.S. Dist. LEXIS 126011, at *14 (N.D.N.Y. Sept. 16, 2016) (quoting *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995) *vacated on other grounds* 518 U.S. 1031 (1996)); *see also Ross v. Guy*, 2022 U.S. Dist. LEXIS 44714, at *19 (E.D.N.Y. Mar. 14, 2022) (collecting cases prohibiting plaintiff from suggesting a specific dollar amount of non-economic damages).

Finally, whether individual defendants will be indemnified with respect to liability for claims under Section 1983 is not relevant to any issue before the jury. *See Woolfolk v. Baldofsky*, 2022 U.S. Dist. LEXIS 120838, at *7 (E.D.N.Y. July 8, 2022) (collecting cases).

Dated: White Plains, New York
      May 15, 2025

                          Respectfully submitted,

                          WILSON, ELSER, MOSKOWITZ,
                          EDELMAN & DICKER LLP
                          Attorneys for Defendants Town of Greenburgh, Kobie Powell, and Frank Farina

                          _____
                          John M. Flannery, Esq.
                          Eliza M. Scheibel, Esq.

                          1133 Westchester Avenue
                          White Plains, NY 10604

310802440v.4

(914) 323-7000
Our File No.: 11174.00005

29

**CERTIFICATE OF COMPLIANCE**

I hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing memorandum of law

complies with the word-count limitations because the document, exclusive of the caption, table of

contents, table of authorities, and signature block, contains 8,747 words.

_____

Eliza M. Scheibel, Esq.

30